KING v REED

Docket No. 269760. Submitted October 3, 2007, at Detroit. Decided April
    8, 2008, at 9:00 a.m.

    John W. King, as personal representative of the estate of Kenneth A.
    King, deceased, brought an action in the Genesee Circuit Court
    against Donald N. Reed, Jr., M.D., Donald N. Reed, Jr., M.D., P.C.,
    and others, alleging medical malpractice. After the commencement
    of discovery, the court, Archie L. Hayman, J., granted the plain-
    tiff's motion to amend the complaint to allege against Reed and his
    professional corporation additional theories of liability that were
    based on facts and information that were revealed in the course of
    discovery. Reed and his professional corporation thereafter filed a
    motion in limine to preclude the introduction of evidence in
    support of the added theories of negligence on the basis that the
    claims of malpractice were not alleged in a timely filed affidavit of
    merit because they were not alleged in the affidavit of merit filed
    with the original complaint and a new or amended affidavit was
    not filed with the amended complaint. The court agreed with the
    Reed defendants and granted their motion. The court thereafter
    granted the Reed defendants' motion for a directed verdict after
    concluding that the testimony of Dr. John Dykes, II, the doctor
    who performed the surgery on the decedent along with Dr. Reed,
    established that Dykes would have performed the surgery even if
    he had received accurate information from Dr. Reed before the
    surgery. The plaintiff appealed.

    The Court of Appeals *held*:

    1. MCL 600.2912d does not require the plaintiff to file an
amended or additional affidavit of merit when filing his amended
complaint. The clear language of the statute requires the filing of
an affidavit of merit only with the original complaint. Requiring
the filing of an additional affidavit of merit in this case would not
promote the Legislature's intent behind affidavits of merit of
curtailing frivolous medical-malpractice lawsuits, because once an
affidavit of merit has been filed with a complaint, the statutory
intent has been satisfied.

    2. An affidavit of merit is presumed valid until rebutted. Thus,
assuming that the affidavit of merit would be valid if the amended

theories of liability were reasonably revealed only during discovery, the Reed defendants would have the burden of proving that the plaintiff could have known of the amended theories before discovery. No evidence established that the plaintiff discovered such evidence before discovery. The order of the trial court prohibiting the plaintiff from pursuing the claims set forth in the amended complaint must be reversed.

3. The trial court erroneously determined that the testimony of Dr. Dykes unequivocally established that he would have performed the surgery even if he had received accurate information from Dr. Reed. The trial court impermissibly weighed the evidence in determining the testimony of Dr. Dykes to be credible. This determination is reserved for the jury. The trial court erred in granting the motion for a directed verdict.

Reversed and remanded for further proceedings.

WILDER, P.J., concurring, joined the majority with regard to parts I and II(B), and with regard to the result reached in part II(A). He wrote separately to note that the proper rule of construction applicable in interpreting MCL 600.2912d is not to give the language a reasonable construction that best accomplishes the purpose of the statute. A so-called "reasonable construction" that conflicts with the plain language of an unambiguous statute must defer to the intent inferred directly from the words of the statute.

NEGLIGENCE — MEDICAL MALPRACTICE — COMPLAINTS — AFFIDAVITS OF MERIT.

MCL 600.2912d requires a plaintiff to file an affidavit of merit with a medical malpractice complaint; the statute does not require the plaintiff to file an additional or amended affidavit of merit when filing an amended complaint.

*Mark Granzotto, P.C.* (by *Mark Granzotto*), and *Gittleman, Paskel, Tashman, Walker, P.C.* (by *Clifford Paskel*), for the plaintiff.

*Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by *Christopher L. Terry* and *David A. Brauer*), for Donald N. Reed, Jr., M.D., and Donald N. Reed, Jr., M.D., P.C.

Before: WILDER, P.J., and BORRELLO and BECKERING, JJ.

BORRELLO, J. Plaintiff appeals as of right the trial court's order granting a directed verdict in favor of

defendants Donald N. Reed, Jr., M.D., and Donald N. Reed, Jr., M.D., P.C., as well as the trial court's order granting defendants' motion in limine to preclude plaintiff from presenting evidence in support of theories of negligence that were not contained in plaintiff's affidavit of merit. For the reasons more fully set forth in this opinion, we reverse the rulings of the trial court and remand the matter for further proceedings consistent with this opinion.

### I. PERTINENT FACTS AND PROCEDURAL HISTORY

For some time before his death, Kenneth King suffered from a severe case of gastroesophageal reflux disease (GERD), or what is commonly known as heartburn. After medication and other conservative treatment efforts failed, King was referred to defendant Reed, a general surgeon. In June 1998, defendant Reed performed a surgical procedure known as a Nissen fundoplication[1] on King. Five months later, King reported a return of his epigastric and chest pain. In June 2000, Reed performed a second fundoplication procedure on King.

King's symptoms began to return again, and Reed suspected that King was suffering from Barrett's esophagus, a condition in which acid destroys the lining of the esophagus and the stomach replaces some of the lost esophageal lining with stomach lining. Testimony at trial indicated that Barrett's esophagus itself is not a form of cancer, but approximately one percent of people with Barrett's esophagus may develop esophageal cancer. According to plaintiff's expert, doctors classify Barrett's esophagus into three stages: low-grade,

---

[1] "Fundoplication" is "[s]uture of the fundus of the stomach around the esophagus to prevent reflux in repair of hiatal hernia." *Stedman's Medical Dictionary* (26th ed).

moderate-grade, and high-grade dysplasia. A person with low- or moderate-grade dysplasia has a very small chance of developing esophageal cancer and must be monitored and have an annual endoscopy.[2] High-grade dysplasia will either turn into cancer or is cancer already, and most surgeons recommend treatment in the form of an esophagectomy, which involves removal of the esophagus.

In August 2000, Reed performed an endoscopy on King, taking biopsy samples of the esophageal lining to determine whether King had Barrett's esophagus. The results came back negative for Barrett's esophagus. Reed performed a second endoscopy, and this time a pathologist indicated that the biopsy samples were "suggestive" of Barrett's esophagus, but negative for high-grade dysplasia. Reed testified that although he suspected that King had Barrett's esophagus, he had not yet diagnosed that condition. He stated that "at the very least, it looked like Barrett's to me," although he admitted that Barrett's esophagus had never been confirmed by a pathologist. Reed told King that he had Barrett's esophagus some time between January 24, 2001, and February 9, 2001.

Reed referred King to defendant John Dykes, II, a cardiothoracic surgeon, with the intention of having King undergo an esophagectomy. Dykes testified that he received a letter from Reed, along with a February 9, 2001, note written by Reed that stated, in pertinent part: "[a] biopsy is [sic] distal esophagus the end of January and it now shows Barrett's esophagus. I would now recommend distal esophagectomy . . . ."

---

[2] An "endoscopy" is an "[e]xamination of the interior of a canal or hollow viscus by means of a special instrument . . . ." *Stedman's Medical Dictionary* (26th ed).

Reed explained that he referred King to Dykes be-
cause, although Reed had performed eight esophagec-
tomies and been involved in about 20 Ivor-Lewis esoph-
agectomies, he had been denied privileges to perform an
esophagectomy when he applied at defendant Genesys
Regional Medical Center. According to Reed, he had
never performed the Ivor-Lewis procedure alone, and,
even with privileges at the hospital, he would not have
done it alone or as the lead surgeon. Reed indicated in
a letter to Dykes that he was "referring [King] for
evaluation of distal esophagectomy because he has
Health Plus only at Genesys, and apparently [Reed]
can't get around the privilege issue for distal esophagec-
tomy." Dykes had privileges at Genesys.

Reed testified that he sent Dykes copies of King's
pathology reports before King's surgery was performed.
Dykes testified, however, that he did not recall whether
he received pathology reports from defendant Reed.
Dykes testified that he "[c]ertainly" relied on commu-
nications from defendant Reed that he had performed
biopsies on King and that such biopsies revealed that
King had Barrett's esophagus." In choosing the proper
surgical technique under the circumstances, Dykes tes-
tified that, "I make my own decisions, so [Reed] could
send [a referral] to me with that recommendation [to do
an Ivor-Lewis distal esophagectomy] and that doesn't
necessarily mean that I agree with it . . . ." On the basis
of the information conveyed to him, Dykes concluded
that the appropriate surgical procedure for King was an
Ivor-Lewis distal esophagectomy, wherein a portion of
the stomach and esophagus are removed and the re-
maining portion of the stomach is moved higher into
the chest and reconnected to the remaining portion of
the esophagus. The surgery requires two incisions and
two operating fields: one in the chest to remove the
esophagus and one in the abdomen to move the stom-

ach. Dykes also testified that the planned surgical procedure was extremely dangerous and that King had a 20 percent chance of dying from the surgery. Thus, a critical issue in the case was whether King actually needed the surgery given his actual diagnosis.

On March 19, 2001, Reed and Dykes operated on King, performing an Ivor-Lewis distal esophagectomy. Reed testified that during surgery, he "mobilized the stomach" and "took down the adhesions," a procedure that is normally not part of an Ivor-Lewis surgery, but was necessary because of King's previous surgeries. According to Reed, the operation took 10 hours, and King's stomach had to be entered twice during surgery because it could not be moved. Dykes testified that he sent the entire distal esophagus to a pathologist and was surprised to learn that the pathologist found no evidence of Barrett's esophagus.

Within 24 hours of surgery, King developed signs of an infection. King asked Dykes whether the sutures might have separated. Dykes took King back to surgery and discovered that an anastomosis, one of the surgical connections made during surgery, had broken down and "leaked things into the chest cavity, gastric juice, et cetera." Dykes testified that "[t]he part of the stomach that had been used to perform the anastomosis, the very end of it was necrotic, dead basically," due to lack of adequate blood supply. King developed sepsis and suffered multiple organ failures. He died on April 29, 2001. An autopsy revealed that King had no evidence of Barrett's esophagus.

John King, as personal representative of Kenneth King's estate, filed a complaint for wrongful death on February 14, 2003, alleging that defendants Reed, Dykes (and their corresponding professional corporations), and Genesys Regional Medical Center breached

their applicable duties of reasonable care. Two affidavits of merit were filed with the complaint, one of which alleged that Reed had been negligent in failing to confirm the diagnosis of Barrett's esophagus before the procedure and in failing to perform an arteriogram to ensure that there was an adequate blood supply to the organs involved in the surgery.[3] No specific allegations were made against Reed for his role in the surgery itself or in King's postsurgical care.

After the commencement of discovery, plaintiff moved to amend the complaint to allege additional theories of liability against Reed based on facts and information that were revealed during the course of discovery. The trial court granted the motion on May 25, 2004. As a result, plaintiff was permitted to allege that defendant Reed breached the standard of care not only for his preoperative actions and inactions, but also for his role in the surgery itself and in the management of King's postsurgical care. A few weeks before trial was scheduled to begin, however, defendants filed a motion in limine to preclude the introduction of evidence in support of the added theories of intraoperative and postoperative negligence by defendant Reed, arguing that plaintiff should be precluded from presenting evidence at trial of such negligence because the claimed acts of malpractice were not alleged in a timely filed affidavit of merit. Plaintiff argued that the original affidavit of merit filed against defendant Reed sufficiently alleged intraoperative negligence by Reed and that he did not need to file a new affidavit of merit with the amended complaint given that the added theories of liability were based on information gleaned after the commencement of litigation through the discovery pro-

---

[3] The second affidavit of merit was filed against Dykes and is not relevant to this appeal.

cess. The trial court granted the motion and precluded plaintiff from pursuing the additional theories of liability against Reed at trial.

Plaintiff resolved his claims against defendant Dykes before trial. A jury trial began on March 7, 2006, limited to plaintiff's claims against defendant Reed for his presurgical conduct. Plaintiff presented three expert witnesses at trial who testified that an esophagectomy is only indicated where there is a confirmed diagnosis of Barrett's esophagus with high-grade dysplasia. Plaintiff's experts also testified that Reed did not have a confirmed diagnosis of Barrett's esophagus and had no pathologic study suggesting a degree of dysplasia. Thus, they alleged that Reed provided inaccurate information to Dykes and that an esophagectomy was not warranted under the circumstances. Plaintiff called Dykes to the stand, and he testified that he relied on Reed's representations regarding King's diagnosis of Barrett's esophagus. On cross-examination, Dykes was asked what he would have done had Reed not represented that King had Barrett's esophagus, and Dykes equivocated, but eventually stated that he probably still would have performed the surgery.

At the close of plaintiff's proofs, defendants moved for a directed verdict, contending that plaintiff had failed to prove by a preponderance of the evidence that had defendant Reed not breached the standard of care before surgery, the surgery would not have gone forward, because "all of the evidence before this jury says it didn't matter what Reed did, Dykes was gonna [sic] do this surgery regardless." The trial court granted defendants' motion for a direct verdict, stating, "Dykes clearly indicates that, even if there had been no diagnosis of Barrett's esophagus, he would have performed this surgery." This appeal followed.

## II. ANALYSIS

### A. NECESSITY OF AFFIDAVIT OF MERIT
### WITH AMENDED COMPLAINT

The first issue raised in this appeal is whether plaintiff was required to file another affidavit of merit with the amended complaint. Defendant Reed contends that because plaintiff's complaint, as amended, contained theories of intraoperative and postoperative negligence against Reed that were not referenced in the original affidavit of merit, the trial court correctly held that such theories were barred as a matter of law. Plaintiff argues that he did not need to file an additional affidavit of merit with the amended complaint because the affidavit of merit filed with the original complaint could serve to certify amended claims, and the affidavit of merit did not need to allege acts that were discovered after the commencement of litigation during the discovery process. The trial court's rationale for precluding plaintiff from presenting evidence at trial of Reed's intraoperative and postoperative negligence was that the affidavit of merit against defendant Reed that was attached to the original complaint did not include any statements regarding any intraoperative or postoperative negligence on the part of defendant Reed; therefore, the trial court reasoned, plaintiff's new claims could not be considered because the period of limitations for filing a claim regarding those theories had already expired, and an additional affidavit of merit would therefore be untimely. The trial court held that MCL 600.2912d required plaintiff to file another affidavit of merit that would address the claims of negligence in the amended complaint before the period of limitations expired.

Resolution of this issue involves interpretation of MCL 600.2912d. Statutory interpretation is a question

of law that this Court reviews de novo. *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd*, 472 Mich 479, 488; 697 NW2d 871 (2005). Similarly, we review a trial court's grant of summary disposition de novo. *Id.* See also *Zsigo v Hurley Med Ctr*, 475 Mich 215, 220; 716 NW2d 220 (2006). Given the clear intent of MCL 600.2912d, as gleaned from the plain language of the statute itself and the fact that the affidavit of merit was filed before the commencement of discovery, we determine that MCL 600.2912d did not require plaintiff to file an amended or additional affidavit of merit when filing his amended complaint.

### 1. LANGUAGE OF THE STATUTE

When addressing a question of statutory construction, this Court must begin by examining the language of the statute. *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 158; 627 NW2d 247 (2001). The primary rule governing the interpretation of statutes is to discern and give effect to the Legislature's intent through reasonable construction in consideration of the purpose of the statute and the object sought to be accomplished. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). If a statute is clear, it must be enforced as plainly written. *People v Spann*, 250 Mich App 527, 530; 655 NW2d 251 (2002). Nothing will be read into a clear statute that is not within the manifest intention of the Legislature, as derived from the language of the statute itself, *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002), and courts may not speculate about the probable intent of the Legislature beyond the language expressed in the statute, *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 173; 610 NW2d 613 (2000). See also *Twentieth*

*Century Fox Home Entertainment, Inc v Dep't of Treasury*, 270 Mich App 539, 545; 716 NW2d 598 (2006).

MCL 600.2912d states, in pertinent part:

> (1) Subject to subsection (2), the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:

> (a) The applicable standard of practice or care.

> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

> (c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

> (d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

MCL 600.2912d(1) states that "in an action alleging medical malpractice . . . the plaintiff's attorney shall file with the complaint an affidavit of merit . . . ." The term "action" used in MCL 600.2912d(1) is the "judicial proceeding," and does not equate with the filing of an amended complaint. Black's Law Dictionary (8th ed).[4] Furthermore, MCL 600.2912d requires "*an* affidavit of merit" to be filed with "*the* complaint . . . ." MCL

---

[4] Courts may consult dictionary definitions to determine the ordinary meaning of undefined statutory terms. *Koontz v Ameritech Services, Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002).

600.2912d (emphasis added). Had the Legislature in-
tended for the affidavit-of-merit requirement to apply
to complaints other than the original complaint filed, it
could have used the term "any" or "all" complaints or
could have explicitly included language requiring the
filing of an additional affidavit of merit with an
amended complaint. Instead, the Legislature used the
definite article "the," which suggests that the affidavit
of merit must only accompany the original complaint.
By its own terms, MCL 600.2912d(1) does not require
the filing of an additional affidavit of merit with an
amended complaint. This Court will not read anything
into a statute that is not within the manifest intent of
the Legislature, as gleaned from the language of the
statute itself. *Universal Underwriters Ins Group v Auto
Club Ins Ass'n*, 256 Mich App 541, 544; 666 NW2d 294
(2003). Had the Legislature sought to require the filing
of an additional affidavit of merit with an amended
complaint, it could have included such a requirement in
the statute.

### 2. LEGISLATIVE PURPOSE

Our Supreme Court has stated that in determining
legislative intent, statutory language must be given a
reasonable construction that best accomplishes the pur-
pose of the statute. *Frankenmuth Mut, supra* at 515. In
reliance on the directives from our Supreme Court
regarding issues of statutory construction, this Court
has recognized that the Legislature's purpose in enact-
ing § 2912d was to deter frivolous lawsuits and that
"requiring an affidavit of merit is rationally related to
achieving the result of reduced frivolous medical-
malpractice claims" because a medical malpractice
plaintiff "will eventually be required to provide evi-
dence that a facility or professional deviated from

professional norms." *Barlett v North Ottawa Community Hosp*, 244 Mich App 685, 695; 625 NW2d 470 (2001). In essence, the statute provides a gate-keeping role of ensuring against frivolous medical malpractice claims by requiring plaintiffs to file an affidavit of merit at the time the action is commenced. Once an action has been commenced and an affidavit of merit in compliance with the statute has been filed with the complaint, the purpose of the statute has been fulfilled.

Furthermore, we find it significant that the affidavit of merit must be submitted with the complaint before the commencement of discovery. Our Supreme Court has recognized that the fact that a plaintiff's notice of intent is filed before the commencement of discovery is relevant to determining whether the notice of intent is sufficient:

> [T]he notice of intent is provided at the earliest stage of a medical malpractice proceeding. Indeed, the notice must be provided before the action can even be commenced. At the notice stage, discovery as contemplated in our court rules, MCR 2.300 *et seq.*, has not been commenced, and it is likely that the claimant has not yet been provided access to the records of the professional or facility named in the notice. It is therefore reasonably anticipatable that plaintiff's averments as to the applicable standard may prove to be "inaccurate" or erroneous following formal discovery; moreover, it is probable that the alleged standard of care will be disputed by the defendants. In light of these circumstances, the claimant is not required to craft her notice with omniscience. However, what is required is that the claimant make a good-faith effort to aver the specific standard of care that she *is claiming* to be applicable to each particular professional or facility that is named in the notice. [*Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 691-692; 684 NW2d 711 (2004) (emphasis in original).]

Although the above-quoted language addresses the notice-of-intent requirements of MCL 600.2912b, we

find the Supreme Court's reasoning applicable also to the affidavit-of-merit requirement of MCL 600.2912d. The statement that the claimant was "not required to craft her notice with omniscience" to toll the statute of limitations, but was only required to "make a good-faith effort to aver the specific standard of care that she *is claiming* to be applicable to each particular professional or facility that is named in the notice" applies equally to the affidavit-of-merit stage of the proceedings because at the time the complaint and affidavit of merit are filed, discovery has not yet commenced. Under MCR 2.302(A)(1), discovery commences "[a]fter commencement of an action[.]" "A civil action is commenced by filing a complaint with a court." MCR 2.101(B). Therefore, while the complaint and affidavit of merit are filed after the notice of intent, like the notice of intent, the affidavit of merit is filed before the commencement of discovery. Because discovery was not available until after plaintiff filed his complaint and affidavit of merit, plaintiff's affidavit of merit was not required to contain information that could not have been known to plaintiff before discovery had commenced.

The Supreme Court has also noted the significance of the fact that the affidavit of merit is filed before discovery in determining matters of an affiant's qualifications:

> Under Michigan's statutory medical malpractice procedure, plaintiff must obtain a medical expert at two different stages of litigation—at the time the complaint is filed and at the time of trial. With regard to the first stage, under MCL 600.2912d(1), a plaintiff is required to file with the complaint an affidavit of merit signed by an expert who the plaintiff's attorney *reasonably believes* meets the requirements of MCL 600.2169. With regard to the second stage, the trial, MCL 600.2169(1) states that "a person

*shall not* give expert testimony . . . unless the person" meets enumerated qualifications (emphasis added). . . .

The Legislature's rationale for this disparity is, without doubt, traceable to the fact that until a civil action is underway, no discovery is available. See MCR 2.302(A)(1). Thus, the Legislature apparently chose to recognize that at the first stage, in which the lawsuit is about to be filed, the plaintiff's attorney only has available publicly accessible resources to determine the defendant's board certifications and specialization. At this stage, the plaintiff's attorney need only have a *reasonable belief* that the expert satisfies the requirements of MCL 600.2169. See MCL 600.2912d(1). [*Grossman v Brown*, 470 Mich 593, 598-599; 685 NW2d 198 (2004) (emphasis in original).]

The *Grossman* Court was considering the requirement that the plaintiff's attorney must "reasonably believe" that the affiant would be qualified under MCL 600.2169. While the issue in the instant case is different, *Grossman* underscores the significance of the fact that discovery has not taken place at the time the plaintiff must file an affidavit of merit in a medical-malpractice case. A plaintiff's obligation in articulating the requirements of MCL 600.2912d(1)(a)-(d) in an affidavit of merit cannot be expected to go beyond that which is known and available before the commencement of discovery.

We find further support for our holding in this Court's opinion in *McElhaney v Harper-Hutzel Hosp*, 269 Mich App 488, 492-496; 711 NW2d 795 (2006). In *McElhaney*, a physician certified the affidavit of merit; however "[a]s discovery progressed, it became clear that plaintiff's claim of medical negligence focused primarily on the actions of defendant's nurse midwife." *Id.* at 495. This Court held that "plaintiff's attorney's belief that [the physician] would fulfill the requirements of [MCL 600.2169] was at least reasonable at the time the

complaint was filed because it was not until discovery was conducted that plaintiff narrowed his malpractice claim to the actions of the nurse midwife." *McElhaney, supra* at 495. Although the Court considered the reasonable-belief language of MCL 600.2912d, which is inapplicable to this case, we nonetheless find the rationale convincing.

Our examination of the language of MCL 600.2912d leads us to conclude that the clear language of the statute requires the filing of an affidavit of merit only with the original complaint. Because the Legislature clearly indicated that the affidavit of merit is to be filed with the initial complaint, it was not necessary for plaintiff to file an amended affidavit of merit with his amended complaint. Had the Legislature intended that a new affidavit of merit must be filed to address issues uncovered during discovery and brought against a party through an amended complaint, it would have clearly stated so in the body of the statute. Furthermore, requiring the filing of an additional affidavit of merit in this case would not promote the Legislature's intent of curtailing frivolous medical-malpractice lawsuits because once an affidavit of merit has been filed with a complaint, the statutory intent has been satisfied. Defendants' contention that the affidavit-of-merit requirement applies to counts amended as a result of information gleaned during discovery is not only contrary to the purpose of the affidavit-of-merit statute and existing caselaw, but it is also wholly unnecessary, because other means are available for dismissing claims unsupported by expert testimony.

An affidavit of merit is presumed valid until rebutted. *Kirkaldy v Rim*, 478 Mich 581, 586; 734 NW2d 201 (2007). Thus, assuming that the affidavit of merit would be valid if the amended theories of liability were

reasonably revealed only during discovery, defendant Reed would have the burden of proving that plaintiff could have known of the amended theories before discovery. Given that there was no evidence that established that plaintiff discovered evidence of any negligence on Reed's part for his role in King's intraoperative or postoperative care before the commencement of discovery, plaintiff's affidavit of merit against defendant Reed satisfied the requirements of MCL 600.2912d, and nothing in the statute suggests that plaintiff was required to file a new affidavit of merit. Accordingly, we reverse the decision of the trial court that prohibited plaintiff from pursuing claims set forth in plaintiff's first amended complaint.

### B. DIRECTED VERDICT

"When reviewing a trial court's decision on a motion for a directed verdict, the standard of review is de novo and the reviewing court must consider the evidence in the light most favorable to the nonmoving party." *Zsigo, supra* at 220-221.

The trial court granted defendants' motion for a directed verdict because it determined, on the basis of the testimony of Dr. Dykes, that "even if there had been no diagnosis of Barrett's esophagus, [Dr. Dykes] would have performed this surgery . . . ." Plaintiff contends that because Dykes equivocated regarding whether he would have performed King's surgery if he had received accurate information from defendant Reed regarding whether King had Barrett's esophagus, the trial court erred in holding that Dykes unequivocally testified that he would have performed the procedure even with accurate information from defendant Reed. Plaintiff argues that a question of fact arises from Dykes's testimony because, while Dykes testified that in looking

back and reflecting on the matter he might have done the surgery in the absence of a confirmed diagnosis of Barrett's esophagus, he also stated that the Barrett's esophagus diagnosis was the main reason for doing the surgery. According to plaintiff, the jury should have been given the opportunity to weigh the testimony for itself, because it may have chosen to discredit Dykes's speculation regarding whether he would have performed surgery on King if he had accurate information regarding whether King had been diagnosed by a pathologist with Barrett's esophagus.

Reed argues that the trial court properly granted his motion for a directed verdict because plaintiff failed to demonstrate sufficient facts that would support a reasonable inference of a logical sequence of cause and effect between defendant Reed's alleged preoperative negligence and King's death. Reed asserts that plaintiff offered no evidence that would support a reasonable inference that it is more probable than not that Dykes would not have performed the procedure, regardless of the existence of Barrett's esophagus, and regardless of any input or recommendations from defendant Reed.

Our review of the record leads us to conclude that the trial court erroneously determined that Dykes's testimony unequivocally established that he would have performed the Ivor-Lewis surgical procedure on King even if defendant Reed had determined that King did not have Barrett's esophagus. Dykes testified that he personally decided to do the Ivor-Lewis procedure, but he also testified that he relied on defendant Reed's statements that he had performed biopsies confirming Barrett's esophagus, as well as notes from defendant Reed expressly stating that a biopsy had confirmed that King had Barrett's esophagus. Despite the fact that Dykes said that he stood behind his decision to perform

the procedure even though King did not have Barrett's esophagus, he also stated that he "would be hard pressed to do [the procedure] without the Barrett's [diagnosis]" and that defendant Reed's representations that it appeared that King had Barrett's esophagus had made the decision to do the procedure easier. When asked if he thought the Ivor-Lewis procedure was the best surgery for King, Dykes responded, "[b]etween the . . . symptoms *and the indication of Barrett's; yes sir.*" (Emphasis added.) When asked what he would have done if he knew the pathology reports had not shown Barrett's esophagus, Dykes responded, "I would have thought about it long and hard. You know, I definitely think I would have. If operative surgery—if operative therapy was what we decided to go with, that would have been the procedure I would have picked."

When considering a motion for a directed verdict, it is "the factfinder's responsibility to determine the credibility and weight of trial testimony." *Zeeland Farm Services, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 195; 555 NW2d 733 (1996). By granting defendant Reed's motion for directed a verdict on the theory that plaintiff had not shown that defendant Reed's communications with Dykes had caused Dykes to perform the Ivor-Lewis procedure, the trial court impermissibly weighed the evidence and found Dykes's testimony to be credible, which is a determination that is properly reserved for the jury. Accordingly, when considering the evidence in the light most favorable to plaintiff, *Zsigo, supra*, the trial court committed error requiring reversal and impermissibly weighed the evidence when it found that "Dykes clearly indicate[d] that, even if there had been no diagnosis of Barrett's esophagus, he would have performed this surgery." Moreover, in light of testimony from plaintiff's expert that the Ivor-Lewis procedure should not be used to treat King's actual

condition, GERD, and that the procedure could exacerbate GERD, the jury could have disregarded Dykes's testimony that he made the right decision, particularly because Dykes admitted that King had a 20 percent chance of dying from the procedure.[5] For all these reasons, the trial court erred in granting defendants' motion for a directed verdict.

### III. CONCLUSION

For the reasons articulated above, we conclude that the trial court erred by holding that plaintiff could not pursue the claims alleged in his first amended complaint and by directing a verdict for defendant Reed and his professional corporation.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

BECKERING, J. concurred.

WILDER, P.J. (*concurring*). I join in the majority opinion in parts I and II(B), and agree with the result reached by the majority in part II(A). I write separately with regard to the result reached in part II(A) in order to state a differing view on the rule of statutory construction applicable to our interpretation of MCL 600.2912d. Although my disagreement with the majority's analysis is not outcome-determinative in this particular case, nevertheless, I put pen to paper in the event that this disagreement proves to be significant in a future case.

As noted by the majority, in determining whether plaintiff was required to file another (or amended)

---

[5] "[T]he jury is free to credit or discredit any testimony." *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001).

affidavit of merit at the time the amended complaint was filed in the lower court, this Court is required to interpret MCL 600.2912d. MCL 600.2912d provides, in relevant part:

> (1) Subject to subsection (2), the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
>
> (a) The applicable standard of practice or care.
>
> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.
>
> (c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.
>
> (d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

The majority concludes that in determining the Legislature's intent in MCL 600.2912d, we must give the statutory language "a reasonable construction" that best accomplishes the purpose of the statute. See *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998).[1] I disagree that this is the appropriate rule of construction.

---

[1] At least one other panel of this Court has applied the "reasonable construction" rule of statutory construction. See, e.g., *Hill v LF Transportation, Inc*, 277 Mich App 500; 746 NW2d 118 (2008).

As recently noted by this Court, "[o]ur primary task in construing a statute is to discern and give effect to the intent of the Legislature. To do so, we begin with the language of the statute, *ascertaining the intent that may reasonably be inferred* from its language. The words contained in the statute provide us with the most reliable evidence of the Legislature's intent. . . . When the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither necessary nor permitted." *Kinder Morgan Michigan, LLC v City of Jackson,* 277 Mich App 159, 163; 744 NW2d 184 (2007) (citations and quotation marks omitted; emphasis added). Determining whether a certain legislative intent may be reasonably inferred from particular statutory language constitutes a different type of judicial analysis than determining whether a certain construction of a statute is reasonable. Whether a particular construction of a statute is "reasonable" and best accomplishes the purposes of the statute could be subject to debate. See, e.g., *Cameron v Auto Club Ins Ass'n,* 476 Mich 55, 83 n7; 718 NW2d 784 (2006). In any event, a so-called "reasonable construction" that conflicts with the plain language of an unambiguous statute must defer to the intent inferred directly from the words of the statute.[2]

Here, the statutory language unambiguously states that an affidavit of merit must be filed with "the complaint." Because the statute does not refer to amendments to the complaint, I agree with the majority that plaintiff is not required to file an additional affidavit of merit at the time of the filing of an amended complaint.

---

[2] To do otherwise would be to second-guess the policy choice of the Legislature, a rule of construction that our Supreme Court repudiated when it rejected the use of the "absurd result" rule of statutory construction to interpret unambiguous statutory language. See *People v McIntire,* 461 Mich 147, 155-158; 599 NW2d 102 (1999).