MILLER v MALIK

Docket No. 277952. Submitted June 3, 2008, at Detroit. Decided September 18, 2008, at 9:00 a.m.

Nancy Miller, as personal representative of the estate of her deceased husband, William Miller, brought a wrongful-death, medical-malpractice action in the Oakland Circuit Court against Ghaus Malik, M.D., Susan E. Oshnock, P.A.-C., Henry Ford Health System, Ashok Prasad, M.D., and William Beaumont Hospital. The plaintiff made the following allegations. Malik had performed a cervical disketomy on the decedent at Beaumont Hospital. The decedent complained of numbness in his legs after the surgery, and he was required to wear thromboembolic deterrent hose, but discontinued wearing them after finding them too small and uncomfortable. Pneumatic compression devices were ordered but not applied. The decedent was discharged from Beaumont Hospital without any order for deep vein thrombosis (DVT) prophylaxis or information about DVT symptoms. When the numbness persisted, the plaintiff called Malik's office and spoke to Oshnock, who told the plaintiff that the decedent need not see Malik. The defendant then telephoned Prasad, the decedent's primary-care physician, who made a diagnosis of cellulitis and prescribed antibiotics. During an appointment at Prasad's office four days after the telephone call, the decedent went into cardiac arrest and was pronounced dead on arrival at Botsford General Hospital. The court, Denise Langford Morris, J., granted summary disposition for the defendants, ruling that the plaintiff's notice of intent to file suit and affidavits of merit were insufficient and that the action was barred by the statute of limitations. The plaintiff appealed.

The Court of Appeals *held*:

1. The defendants did not waive their right to challenge the notice of intent. All the defendants, except for Beaumont Hospital, raised the statute of limitations and the inadequacy of the notice of intent in their affirmative defenses, citing MCL 600.2912b. Beaumont Hospital, in its affirmative defenses, asserted that the plaintiff's claim was barred by the statute of limitations without referring to MCL 600.2912b or otherwise specifically challenging the notice of intent. However, a defendant is not obligated to

challenge the sufficiency of a plaintiff's notice of intent pursuant to MCL 600.2912b until the plaintiff has raised the issue of the tolling provision of MCL 600.5856, which necessarily occurs after the defendant has raised the statute of limitations as a defense in its first responsive pleading. Beaumont Hospital did not waive its right to challenge the notice of intent.

2. MCL 600.2912b(4) requires a notice of intent to contain, among other things, a statement of the manner in which it is alleged the breach of the standard of practice or care caused the injury claimed in the notice. It is not sufficient to state that the defendants' negligence caused the alleged harm; rather, the plaintiff must describe the manner in which the actions or lack thereof caused the complained-of injury. The notice of intent in this case failed to describe the manner in which any failure on the part of any defendant to perform any of the alleged duties caused the decedent's DVT, pulmonary embolism, or death. The trial court correctly ruled that the notice of intent was insufficient.

3. The trial court correctly determined that the plaintiff's action is barred by the statute of limitations. An insufficient notice of intent does not toll the limitations period pursuant to MCL 600.5856(a). While the filing of a complaint and a deficient affidavit of merit tolls the limitations period until the affidavit is determined to be invalid in a subsequent proceeding, a plaintiff who serves an insufficient notice of intent lacks authority to file a complaint and affidavit of merit and is thus precluded from filing a complaint that tolls the limitations period.

Affirmed.

O'CONNELL, J., dissenting, stated that the factual information in the notice of intent—viewed in conjunction with the statement that the defendants breached their respective standard of care by failing to adequately assess and address the decedent's risk of DVT, failing to adequately prevent the decedent from developing DVT after his operation through the use of DVT prophylaxis, and failing to examine the decedent or recommend emergency care in conjunction with failing to recognize the common symptoms of DVT in a patient at high risk of developing the condition—fulfills the purposes of MCL 600.2912b by informing the defendants of the plaintiff's belief that the defendants' failure to do these things resulted in the decedent's death. Because the specificity requirements for a notice of intent under MCL 600.2912b are applicable to the affidavit of merit requirements under MCL 600.2912d, the plaintiff's affidavits of merit, with the exception of an affidavit from a registered nurse that did not contain a sufficient statement

on proximate cause, contained sufficient statements of proximate causation. The trial court erred by ruling that the affidavits were insufficient, except for that of the registered nurse. The proper remedy when an affidavit of merit is deficient is dismissal of the action without prejudice. To the extent any of the plaintiff's claims should be dismissed because of the deficient affidavit of merit, those claims should be dismissed without prejudice. The trial court's decision should be reversed and the case remanded.

1. NEGLIGENCE — MEDICAL MALPRACTICE — NOTICES OF INTENT TO FILE SUIT — AFFIRMATIVE DEFENSE.

A medical-malpractice defendant is not obligated to challenge the sufficiency of a plaintiff's notice of intent to sue until the plaintiff has raised the issue of the tolling provision of MCL 600.5856, which necessarily occurs after the defendant has raised the statute of limitations as a defense in its first responsive pleading (MCL 600.2912b).

2. NEGLIGENCE — MEDICAL MALPRACTICE — NOTICES OF INTENT TO FILE SUIT — PROXIMATE CAUSE.

A notice of intent to file a medical-malpractice suit must contain, among other things, a statement of the manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice; it is not sufficient to state that the defendant's negligence caused the alleged harm; the plaintiff must describe the manner in which the actions or lack thereof caused the complained-of injury (MCL 600.2912b[4]).

3. NEGLIGENCE — MEDICAL MALPRACTICE — NOTICES OF INTENT TO FILE SUIT — STATUTE OF LIMITATIONS.

An insufficient notice of intent to file a medical-malpractice suit does not toll the period of limitations for that suit (MCL 600.2912b, 600.5805[6], 600.5856[a]).

*McKeen & Associates, P.C.* (by *Brian J. McKeen* and *Ramona C. Howard*), for Nancy Miller.

*Willmarth, Ramar & Paradiso, P.C.* (by *John J. Ramar*), for Ghaus Malik, M.D., Susan E. Oshnock, P.A.-C., and Henry Ford Health System.

*Tanoury, Corbet, Shaw, Nauts & Essad, P.L.L.C.* (by *Linda M. Garbarino* and *David R. Nauts*), for Ashok Prasad, M.D.

*O'Connor, DeGrazia, Tamm & O'Connor, P.C.* (by *Julie McCann O'Connor*), for William Beaumont Hospital.

Before: WHITBECK, P.J., and O'CONNELL and KELLY, JJ.

KELLY, J. This wrongful-death, medical-malpractice case primarily concerns whether plaintiff's notice of intent required under MCL 600.2912b was sufficient with respect to defendants, Ghaus Malik, M.D., Susan E. Oshnock, P.A.-C., Henry Ford Health System, doing business as Neurosurgery Associates-Oakland (Henry Ford), Ashok Prasad, M.D., and William Beaumont Hospital (Beaumont). Plaintiff, as personal representative of the estate of her deceased husband, William Miller (Miller), appeals as of right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(7) (claim barred by statute of limitations). We affirm.

I. BASIC FACTS AND PROCEEDINGS

Malik, a neurosurgeon, performed a cervical diskectomy on Miller at Beaumont. Miller experienced numbness in his legs after the surgery. Miller was transferred to Beaumont's rehabilitation unit for physical and occupational therapy, and he was required to wear TED hose,[1] but he removed them because they were too small and uncomfortable. Pneumatic compression devices were ordered (presumably to promote blood flow in the

---

[1] TED is an abbreviation for thromboembolic deterrent, and TED hose are tightly fitting stockings designed to promote circulation.

legs), but they were never applied. Beaumont physicians and nurses did not record any reports of calf tenderness by Miller or other signs or symptoms of deep vein thrombosis (DVT). Miller was discharged, and his discharge orders did not include DVT prophylaxis or information about symptoms.

Miller continued to experience numbness after going home, and he fell on one occasion. His legs became red, shiny, and swollen, and plaintiff repeatedly called Malik's office. However, Oshnock, a certified physician's assistant, allegedly told her that Miller did not need to see Malik. Plaintiff called Prasad, Miller's internist and primary care provider, and Prasad scheduled an appointment for four days later, on September 19, 2003. Prasad initially diagnosed cellulitis over the telephone and prescribed antibiotics. On the day of his appointment, Miller went to Prasad's office, where he went into cardiac arrest. Miller was taken to Botsford General Hospital, where he was pronounced dead upon arrival. An autopsy revealed that Miller died of a pulmonary embolism from a DVT in his leg.

Pursuant to MCL 600.2912b, plaintiff mailed a notice of intent to file a claim to each defendant on April 22, 2005. As required by § 2912b(4), plaintiff included in her notice of intent a statement of proximate causation, which stated the following: "Had the standard of care been complied with in a timely and appropriate manner, William Miller's deep vein thrombosis would have been avoided and/or timely diagnosed and treated, thereby avoiding his demise from pulmonary embolism." After 182 days, in October 2005, plaintiff alleged a wrongful-death claim based on medical malpractice against defendants and filed affidavits of merit. All defendants moved for summary disposition, challenging the proximate causation statements in the notice of intent

and affidavits of merit. The trial court concluded that the notice of intent and affidavits of merit were insufficient, and because the statutory period of limitations had expired, it granted defendants summary disposition.

## II. WAIVER

Plaintiff argues that defendants waived their right to challenge the notice of intent pursuant to MCR 2.111(F)(2)[2] because they failed to plead this defense in their affirmative defenses, as required by subsection F(3)[3] of that rule. We disagree.

All defendants, except Beaumont, specifically raised the statute of limitations and the inadequacy of the notice of intent in their affirmative defenses, citing MCL 600.2912b. As our Supreme Court stated in *Burton v Reed City Hosp Corp*, 471 Mich 745, 755; 691 NW2d 424 (2005), where almost identical affirmative defenses were pleaded, "[s]uch a direct assertion of these defenses by defendants can by no means be considered a waiver."

---

[2] MCR 2.111(F)(2) provides:

A party against whom a cause of action has been asserted by complaint, cross-claim, counterclaim, or third-party claim must assert in a responsive pleading the defenses the party has against the claim. A defense not asserted in the responsive pleading or by motion as provided by these rules is waived . . . .

[3] MCR 2.11(F)(3) pertains specifically to affirmative defenses and states:

Affirmative defenses must be stated in a party's responsive pleading . . . . Under a separate and distinct heading, a party must state facts constituting

(a) an affirmative defense, such as . . . statute of limitations . . . .

Beaumont asserted in its affirmative defenses that plaintiff's claim was barred by the applicable statute of limitations, without referring to MCL 600.2912b or otherwise specifically challenging the notice of intent. However, a defendant is not obligated to challenge the sufficiency of a plaintiff's notice of intent pursuant to MCL 600.2912b until the plaintiff has raised the issue of the tolling provision of MCL 600.5856, which necessarily occurs after the defendant has raised a statute of limitations defense in its first responsive pleading. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 70 n 7; 642 NW2d 663 (2002) (*Roberts I*). Therefore, Beaumont did not waive its right to challenge the notice of intent. Although a party may waive a statute of limitations defense by its course of action and conduct, plaintiff has identified no acts or conduct on the part of any defendant that amount to waiver. *Attorney General ex rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 665; 741 NW2d 857 (2007).

### III. SUFFICIENCY OF THE NOTICE OF INTENT

Plaintiff next contends that the trial court erred by ruling that the proximate causation statement in her notice of intent was deficient and, because the period of limitations had expired, the deficiency in the notice of intent could not be cured and summary disposition was appropriate for defendants. We disagree.

This Court reviews de novo a motion for summary disposition pursuant to MCR 2.116(C)(7). *Trentadue v Buckler Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007). In the absence of disputed facts, we also review de novo whether the applicable statute of limitations bars a cause of action. *Id.* This Court considers "all affidavits, pleadings, and other documentary evidence submitted by the parties and construe[s]

the pleadings in [the] plaintiff's favor." *Doe v Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich App 632, 638; 692 NW2d 398 (2004). Furthermore, we accept as true the complaint's contents unless contradicted by documentary evidence provided by the movant. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

The period of limitations in a malpractice action is two years. MCL 600.5805(6). In order to initiate the lawsuit, the claimant must provide the defendant with a notice of intent to file suit at least 182 days before filing the complaint. MCL 600.2912b(1). If a claim would become barred under the statute of limitations during this 182-day waiting period after the notice of intent is served, then the statute is tolled for the "number of days remaining in the applicable notice period after the date notice is given." MCL 600.5856(c). However, if it is determined that the notice of intent is deficient, then the notice of intent will not function to toll the statute, *Roberts I, supra* at 64, because, in effect, the claimant has not commenced the action, *Boodt v Borgess Med Ctr*, 481 Mich 558, 563; 751 NW2d 44 (2008) (*Boodt II*).

In the present matter, Miller passed away on September 19, 2003. Accordingly, the two-year period of limitations would expire on September 19, 2005. See MCL 600.5805(6). Plaintiff filed her notice of intent on April 22, 2005, and her complaint and affidavits of merit 182 days later, on October 21, 2005. Given these facts, plaintiff's notice of intent tolled the statute of limitations and her claim was properly before the court, presuming that her notice of intent was sufficient. See *Roberts I, supra* at 64; MCL 600.5856(c).

However, in order for a notice of intent to be sufficient, it must contain all the information required

under § 2912b(4). See *Boodt II, supra* at 562-563. That provision provides the following:

> The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
>
> (a) The factual basis for the claim.
>
> (b) The applicable standard of practice or care alleged by the claimant.
>
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
>
> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
>
> (e) The *manner in which* it is alleged *the breach of the standard of practice or care was the proximate cause of the injury* claimed in the notice.
>
> (f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim. [Emphasis added.]

A claimant must present this information "with that degree of specificity which will put the potential defendants on notice as to the nature of the claim against them." *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 701; 684 NW2d 711 (2004) (*Roberts II*). Although some of the information supplied in the notice of intent will evolve as discovery proceeds, a claimant is "required to make good-faith averments that provide details that are *responsive* to the information sought by the statute and that are as *particularized* as is consistent with the early notice stage of the proceedings." *Id.* (emphasis in original). With respect to causation, it is not sufficient to state that the defendants' negligence caused the alleged harm. *Id.* at 699 n 16. Rather, the claimant must describe the manner in which the ac-

tions or lack thereof caused the complained-of injury. *Boodt II, supra* at 560. Further, no portion of the notice of intent may be read in isolation; rather, the notice of intent must be read as a whole. *Boodt v Borgess Med Ctr*, 272 Mich App 621, 628, 630; 728 NW2d 471 (2006) (*Boodt I*), rev'd in part on other grounds 481 Mich 558 (2008).

In the instant case, the standard of care portion of the notice of intent (paragraph II) identified the following duties with respect to all defendants: obtain patient histories and perform a physical examination, recognize the signs and symptoms of DVT and the need to immediately examine a patient exhibiting these signs and symptoms, obtain Doppler studies of the lower extremities, immediately refer a patient with the signs and symptoms of DVT to the emergency room, and "any and all acts of negligence identified through additional discovery." With respect to Malik, Oshnock, Henry Ford, and Beaumont, plaintiff averred that they had the following additional duties: order appropriate DVT prophylaxes, ensure the proper use of anti-embolitic stockings or pneumatic compression devices, assess lower extremities, order laboratory studies, and find alternative DVT prophylaxes when the appropriate size stockings are not available. Plaintiff asserted that Malik and Oshnock also had a duty to be readily available to, and communicate with, other medical personnel. Regarding Henry Ford and Beaumont, plaintiff averred that they had the following additional duties: select, employ, train, and monitor their employees, agents, and staff, ensure that appropriate policies and procedures are adopted and enforced, and ensure proper communication among medical personnel. Plaintiff averred that Beaumont also had a duty to inform the appropriate personnel when an alternative method of DVT prophylaxis is necessary. In claiming that defendants had

breached the applicable standard of practice or care, plaintiff stated, "There was a failure to do all things listed in paragraph II above." With respect to the actions that defendants should have taken to comply with the standard of practice or care, plaintiff simply stated, "See paragraph II above." Regarding the manner in which the alleged breach was a proximate cause of the claimed injury, plaintiff asserted, "Had the standard of care been complied with in a timely and appropriate manner, William Miller's deep vein thrombosis would have been avoided and/or timely diagnosed and treated, thereby avoiding his demise from pulmonary embolism."

Although plaintiff stated that the DVT and Miller's subsequent death would have been avoided if the standard of care had been followed, nowhere did she state how any defendant failed to prevent, diagnose, or treat the DVT or pulmonary embolism. The reader is left to wonder whether plaintiff is alleging that the DVT could have been prevented, whether a diagnosis of the DVT could have been made in time to avoid the pulmonary embolism, or whether the pulmonary embolism could have been diagnosed or treated in time to avoid Miller's death. See *Roberts II, supra* at 699. Plaintiff identified many duties in the standard of care portion of the notice of intent, but she failed to describe the manner in which any failure on the part of any defendant to perform any of these duties caused Miller's DVT, pulmonary embolism, or death. For example, plaintiff asserted that all defendants had a duty to recognize the signs and symptoms of DVT. However, she never identified these signs or symptoms or stated which, if any, Miller exhibited or how recognition of them would have prevented Miller's pulmonary embolism or death. Similarly, plaintiff never indicated how a history, physical examination, Doppler study, DVT prophylaxis, laboratory study, or alternative prophylaxes to TED hose

would have prevented Miller's DVT, pulmonary embolism, or death. The notice of intent provides that all defendants had a duty to refer a patient with signs and symptoms of DVT to the emergency room, but plaintiff failed to state what treatment might have been initiated or how emergency room personnel would have prevented Miller's pulmonary embolism or death. With respect to Henry Ford and Beaumont, plaintiff asserted that they had several duties regarding policies and procedures, but she failed to identify how any breach of these duties caused Miller's DVT, pulmonary embolism, or death. Reading the notice of intent as a whole and taking into account the duties listed in the standard of care portion, the reader cannot discern the manner in which any defendant's conduct or omission caused Miller's DVT, pulmonary embolism, or death.

While recognizing that the notice of intent is served in the early stage of proceedings, we do not believe that plaintiff provided good-faith averments of details that are responsive or particularized. See *Roberts II, supra* at 701. The notice of intent merely stated that Miller's DVT would have been avoided or treated and his death would have been avoided if defendants had complied with the standard of care. It is not sufficient "to merely state that defendants' alleged negligence caused an injury"; plaintiff must provide a statement regarding "the *manner* in which it is alleged that the breach was a proximate cause of the injury." *Id.* at 699 n 16 (emphasis in original). Plaintiff asserts that medical professionals understand that an untreated DVT can break loose, become an embolus, and cause respiratory arrest. In the context of the statement of the standard of care, our Supreme Court has stated that there may be situations, such as the amputation of the wrong limb, the extraction of the wrong tooth, or the failure to remove a surgical instrument from a patient's body,

where the burden required for the statement would be minimal. *Id.* at 694 n 12. However, plaintiff never stated how any defendant's failure to perform any duty caused Miller's DVT, pulmonary embolism, or death, and causation is not obvious to a casual observer. Because plaintiff failed to connect Miller's DVT, pulmonary embolism, or death to the conduct of any defendant in any meaningful way, the notice of intent failed to sufficiently put defendants on notice of the nature of the claim. *Id.* at 701. Accordingly, the trial court properly determined that the notice of intent was insufficient.

Plaintiff asserts that defendants answered her complaint, which contained the same factual allegations and breaches of the standard of care as the notice of intent, and filed affidavits of meritorious defense, which demonstrates that they understood the claims against them. However, a notice of intent requires more than merely apprising the potential defendant of the "nature and gravamen" of the plaintiff's allegations; it requires a statement of the " 'manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.' " *Boodt II*, *supra* at 560-561, quoting MCL 600.2912b(4)(e).

Plaintiff contends that the appropriate remedy for an invalid notice of intent is dismissal without prejudice. Our Supreme Court recently decided *Kirkaldy v Rim*, 478 Mich 581, 585-586; 734 NW2d 201 (2007), in which it held that a complaint and affidavit of merit toll the limitations period pursuant to MCL 600.5856(a) until the affidavit is determined to be invalid in a subsequent proceeding. However, an insufficient notice of intent does not toll the limitations period. *Boodt II*, *supra* at 561. Rather, if the notice of intent is lacking, the

plaintiff is not yet authorized to file a complaint and affidavit of merit, and the limitations period cannot be tolled. *Id.* at 562-563. We therefore affirm the trial court's grant of summary disposition.

IV. SUFFICIENCY OF THE AFFIDAVITS OF MERIT

Plaintiff also asserts that the trial court erred by ruling that the proximate causation statements in her affidavits of merit were deficient and by granting summary disposition. Given our conclusion that summary disposition was properly granted regarding the notice of intent and that plaintiff was not yet authorized to file the complaint and affidavits of merit, we need not address this issue.

Affirmed.

WHITBECK, P.J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent. I would hold that plaintiff's notice of intent and affidavits of merit, with the exception of one, were sufficient and would reverse and remand.

According to plaintiff, on August 12, 2003, William Miller (Miller) had surgery at William Beaumont Hospital (Beaumont). Defendant Ghaus Malik, M.D., performed the cervical diskectomy. After the surgery, Miller experienced lower extremity numbness. On August 19, 2003, Miller was transferred to the rehabilitation unit for therapy and was discharged on August 27, 2003. Even with rehabilitation, Miller spent a great deal of time in bed.

At home, Miller experienced lower extremity numbness and had fallen. His legs were red, shiny, and swollen. Plaintiff contacted defendant Malik's office for an appointment, but was told by defendant Susan E.

Oshnock, defendant Malik's physician's assistant, that Miller did not need to see defendant Malik. Plaintiff then called Miller's primary care physician, defendant Ashok Prasad. Defendant Prasad agreed to see Miller about four days after he was initially contacted. On September 19, 2003, while at defendant Prasad's office, Miller went into cardiac arrest and was pronounced dead at Botsford General Hospital. An autopsy concluded that a pulmonary embolism was the cause of death.

On April 22, 2005, plaintiff sent a notice of intent to defendants. She then filed her complaint in October 2005, along with the affidavits of merit. Defendants filed for summary disposition, alleging the documents lacked the specificity required in their proximate causation statements. The trial court agreed and granted summary disposition and dismissed the action with prejudice.

MCL 600.2912b(4) provides the requirements for a notice of intent:

> The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
>
> (a) The factual basis for the claim.
>
> (b) The applicable standard of practice or care alleged by the claimant.
>
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
>
> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
>
> (e) *The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.*

(f) The names of all health care professionals and health facilities the claimant is notifying under this section in relation to the claim. [Emphasis added.]

The claimant's statements need not be correct, but a good faith effort must be made to " 'set forth [the information] with that degree of specificity which will put the potential defendants on notice as to the nature of the claim against them.' " *Boodt v Borgess Med Ctr*, 272 Mich App 621, 626; 728 NW2d 471 (2006) (*Boodt I*), rev'd in part on other grounds 481 Mich 558 (2008) (*Boodt II*), quoting *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 701; 684 NW2d 711 (2002) (alteration in *Boodt*). Because discovery has not commenced at the time the notice is required, the details provided within the notice need only "allow the potential defendants to understand the claimed basis of the impending malpractice action . . . ." *Roberts, supra* at 691, 692 n 7.

Defendants' argument and the trial court's holding both rely on the fact that the paragraph following the heading, "THE MANNER IN WHICH THE BREACH WAS A PROXIMATE CAUSE OF THE CLAIMED INJURY," in the notice of intent reads in its entirety: "Had the standard of care been complied with in a timely and appropriate manner, William Miller's deep vein thrombosis would have been avoided and/or timely diagnosed and treated, thereby avoiding his demise from pulmonary embolism." However, the issue is not whether any particular section heading contains the required information, but whether, reviewing the notice in its entirety, the information is contained somewhere in the document. *Boodt I, supra* at 628. "Our analysis examines whether the *notice* contains the required information, not whether any specific portion of the notice does." *Id.* (emphasis in original).

Reviewing the notice of intent as a whole reveals that defendant Malik initially recognized that Miller was at risk for deep vein thrombosis (DVT), as evidenced by the ordering of thromboembolic deterrent (TED) hose and pneumatic compression devices, but the TED hose were too small and caused a breakdown in Miller's legs, causing the hose to be removed, and the pneumatic compression devices were never applied by the nurses. Defendant Malik failed to examine Miller at "appropriate intervals" to make certain his risk of DVT was being addressed, which resulted in Miller's developing DVT. Miller was at an increased risk for DVT because of orthopedic surgery, being sedentary, and having fallen at home, but Miller's discharge orders did not include DVT prophylaxis or instructions regarding the signs and symptoms of DVT. Miller exhibited classic symptoms of DVT as his legs were red, shiny, and swollen,[1] and such symptoms were described to defendants Malik, Oshnock, and Prasad, who should have easily recognized them as DVT symptoms in light of Miller's history and risk factors, but their failure to timely diagnose and treat Miller's DVT resulted in his death from a pulmonary embolism.[2]

In *Tousey v Brennan*, 275 Mich App 535, 539-542; 739 NW2d 128 (2007), this Court found a notice of intent sufficient even though its proximate cause statement was as follows: "Due to the negligence and/or breaches of the . . . standard of care or practice by [defendant, the decedent] suffered a life ending myocardial infarction." The notice of intent provided that the

---

[1] Although DVT can be symptomless, the symptoms include swelling in one or both legs, pain or tenderness in one or both legs, warmth in the skin of the affected leg, red or discolored skin in the affected leg, visible surface veins, and leg fatigue.

[2] It is common knowledge within the medical community that untreated DVT can result in pulmonary embolism.

defendant doctor had failed to hospitalize the decedent and obtain an angiogram and consultation, to begin using aspirin, heparin, and beta blockers, and to send a blood sample for testing. *Id.* at 541-542. The defendant doctor had seen the decedent for chest pains, drawn blood, and performed an electrocardiogram, and he concluded that the decedent had suffered a minor heart attack, scheduled an appointment with a cardiologist for four days later, and sent the decedent home, where he died two days later. *Id.* at 541.

This is similar to the present case, where plaintiff's notice of intent alleges that defendants Malik, Oshnock, and Prasad's failure to perform various examination and diagnostic tests resulted in Miller's being sent home with an undiagnosed condition that resulted in his death before he was able to ultimately make his appointment with defendant Prasad. The factual information, viewed in conjunction with the statement that defendants breached their applicable standard of care by failing to adequately assess and address Miller's risk of DVT, failing to adequately prevent Miller from developing DVT after his operation through the use of DVT prophylaxes, and failing to examine Miller or recommend emergency care in conjunction with failing to recognize the common symptoms of DVT in a patient clearly at high risk for developing such a condition, "fulfills the purpose of MCL 600.2912b by informing defendants of plaintiff's belief that [defendants'] failure to do these things resulted in [decedent's death]." *Id.* at 542.

That the chain of causation in this case involves multiple errors that combined to create the result does not render the notice of intent invalid. It is clear from the notice of intent that plaintiff is alleging that the failure to prevent DVT initially, combined with the later

failure to diagnose and treat Miller's DVT, resulted in
Miller's death from pulmonary embolism, a known
result of untreated DVT. There "is no real guesswork"
required to come to the conclusions that the notice of
intent asserts: (1) defendant Malik should have known
that Miller was at an increased risk for DVT, and the
failure to use replacement DVT preventive measures
for the TED hose, as well as the failure of defendant
Beaumont's nurses to use the compression devices,
would and did result in Miller's developing DVT and (2)
defendants Malik, Oshnock, and Prasad's failure to
recognize both the obvious symptoms of DVT and
Miller's increased risk of developing DVT, and their
complete failure to diagnose and provide any treatment
for Miller's DVT or even tell plaintiff that Miller ought
to seek emergency care, resulted in Miller's DVT going
untreated and getting worse until the blood clot broke
free, resulting in Miller's death from a pulmonary
embolism. Defendants clearly understand the nature of
the suit against them after reading the notice of intent
here. *Roberts, supra* at 701.

Contrary to the majority's position, this case is
distinguishable from *Boodt II*, as the present notice of
intent contains a statement of "[t]he manner in which
it is alleged the breach of the standard of practice or
care was the proximate cause of the injury claimed in
the notice." *Boodt II, supra* at 561, quoting MCL
600.2912b(4)(e). The statement in *Boodt II* stated, "If
the standard of care had been followed, [the decedent]
would not have died on October 11, 2001." *Id.* at 560.
The statement contained in the present notice of intent
goes further. It states, "Had the standard of care been
complied with in a timely and appropriate manner,
William Miller's deep vein thrombosis would have been
avoided and/or timely diagnosed and treated, thereby
avoiding his demise from pulmonary embolism." Thus,

the notice specifically stated the "manner in which [the failure to follow the standard of care] was the proximate cause of the injury claimed in the notice"—namely, failing to follow the standard of care resulted in Miller's developing DVT and in the DVT going undiagnosed and untreated, resulting in the pulmonary embolism that killed him. See *id.* at 560 n 1. Accordingly, I would conclude that the trial court erred by finding plaintiff's notice of intent insufficient.

Plaintiff also argues that the trial court erred by concluding that the proximate cause statements in her affidavits of merit were also insufficient. I agree. This Court has held that the specificity requirements for a notice of intent under MCL 600.2912b, as set forth in *Roberts, supra* at 691-692, are applicable to affidavit of merit requirements under MCL 600.2912d. *King v Reed*, 278 Mich App 504, 516-517; 751 NW2d 525 (2008). To the extent that the affidavits of merit contain the same information as the notice of intent, reviewing the affidavits of merit as a whole, they also contain sufficient statements of proximate cause. However, the affidavit of Loretta Mathews, R.N., does not contain a proximate causation statement as required by MCL 600.2912d(1)(d), making it deficient. Accordingly, the trial court also erred by ruling that plaintiff's affidavits of merit were insufficient, except for that of Mathews.

Because I determined that Mathews's affidavit was insufficient, I also address whether the trial court properly dismissed plaintiff's claims with prejudice. In *Kirkaldy v Rim*, 478 Mich 581, 586; 734 NW2d 201 (2007), the Michigan Supreme Court held that "if a defendant believes that an affidavit is deficient, the defendant must challenge the affidavit. If that challenge is successful, the proper remedy is dismissal *without* prejudice." (Emphasis added). To the extent

that any of plaintiff's claims remain dismissed as a result of Mathews's insufficient affidavit, I would reverse the trial court's dismissal with prejudice and instruct the trial court to enter an order dismissing those claims without prejudice, pursuant to *Kirkaldy*.

Because I conclude that the notice of intent and all but one of the affidavits of merit are sufficient and that, to the extent Mathews's insufficient affidavit resulted in the dismissal of plaintiff's claims, the proper remedy was dismissal without prejudice, I would reverse and remand.