LIGONS v CRITTENTON HOSPITAL

Docket No. 278622. Submitted July 14, 2009, at Detroit. Decided August 18, 2009, at 9:00 a.m.

Dujuan Ligons, as personal representative of the estate of Edris Ligons, deceased, brought a wrongful death, medical malpractice action in the Oakland Circuit Court against Crittenton Hospital, David B. Bauer, M.D., and Rochester Emergency Group, P.C. (REG). The decedent had gone to the Crittenton Hospital emergency room, complaining of vomiting, diarrhea, chills, and a fever after a recent colonoscopy. She was treated in the emergency room by Dr. Bauer, whose practice group was REG. Dr. Bauer determined that the decedent was suffering from gastroenteritis and dehydration, gave her antibiotics and fluids, then discharged her from the hospital. The decedent returned to the emergency room on the following day, was diagnosed with peritonitis resulting from a perforated colon, suffered sepsis and multiple organ failure, and died several days later. In the action, the defendants moved for summary disposition, claiming that the plaintiff's notice of intent to sue (NOI), supplemental NOI, and affidavits of merit failed to comply with statutory requirements, that because the three-year period available under the wrongful death saving statute had expired, a conforming NOI or affidavit of merit could not be filed, and that the proper remedy was a dismissal with prejudice. The court, Gene Schnelz, J., denied the motions. The Court of Appeals denied Dr. Bauer and REG leave to file an interlocutory appeal. Unpublished order of the Court of Appeals, entered January 16, 2008 (Docket No. 278622). The Supreme Court, in lieu of granting leave, remanded the case to the Court of Appeals for consideration as on leave granted. 482 Mich 1005 (2008). The Court of Appeals granted Crittenton Hospital's application for leave to file a delayed cross-appeal. Unpublished order of the Court of Appeals, entered March 2, 2009 (Docket No. 288793).

The Court of Appeals held:

1. The plaintiff's NOI and supplemental NOI satisfied the requirements of MCL 600.2912b. The NOI stated the factual basis for the claim, as required by MCL 600.2912b(4)(a), and stated the applicable standard of practice or care, as required by MCL

600.2912b(4)(b). The supplemental NOI stated the manner in which it is alleged that the breach of the standard of practice or care was the proximate cause of the decedent's injury, as required by MCL 600.2912b(4)(e).

2. The affidavits of merit submitted by the plaintiff failed to comply with the requirement in MCL 600.2912d(1)(d) that an affidavit contain a statement of the manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the NOI. The affidavits contain no explanation regarding how Dr. Bauer's decision not to admit the decedent to the hospital on her first visit to the emergency room or obtain appropriate consultations was the proximate cause of the decedent's death. The failure to explain how Dr. Bauer's breach of the applicable standard of care caused the decedent's death necessarily constitutes a failure to establish REG's and Crittenton Hospital's vicarious liability.

3. The plaintiff's action must be dismissed with prejudice because the wrongful death saving period was not tolled upon the filing of the complaint and the affidavits of merit and that period has since expired. Although the statutory period of limitations is tolled when an affidavit of merit is successfully challenged as invalid, allowing a plaintiff to file a complaint accompanied by a conforming affidavit of merit within the remaining time available under the period of limitations, there is no similar tolling of the wrongful death saving period because the wrongful death saving provision is not a statute of limitations. If, as in this case, an affidavit of merit is successfully challenged as being invalid and there is no remaining time available under the wrongful death saving period, dismissal with prejudice is required. MCR 2.110(A) does not include an affidavit of merit among the items defined as a pleading. Accordingly, an affidavit of merit is not a pleading that can be amended and that can relate back to the date of the original pleading under MCR 2.118(A), (D).

Reversed and remanded for the entry of an order of dismissal with prejudice.

FITZGERALD, J., concurring in part and dissenting in part, disagreed that the affidavits failed to comply with the requirements of MCL 600.2912d. One affidavit stated the applicable standard care as being the reasonable care, diligence, skill, and judgment possessed by similarly staffed and equipped hospitals under the same or similar circumstances or by physicians or health care providers under the same or similar circumstances. One affidavit indicated the actions that should have been taken in order to comply with the standard of care by stating that the

decedent should have been admitted to the hospital on her first visit to the emergency room and that consultations with other physicians should have been obtained. Both affidavits indicated how the breach of the standard of care proximately caused the decedent's injury by stating that Dr. Bauer's acts or omissions proximately caused the decedent's death. Judge FITZGERALD would affirm the trial court's denial of the defendants' motions for summary disposition.

1. NEGLIGENCE — MEDICAL MALPRACTICE — NOTICES OF INTENT TO FILE SUIT.

A notice of intent to file a medical malpractice action need not be in any format but must identify, in a readily ascertainable manner, the specific information mandated by statute (MCL 600.2912b).

2. NEGLIGENCE — MEDICAL MALPRACTICE — AFFIDAVITS OF MERIT.

An affidavit of merit in support of a medical malpractice action requires no less specificity than a notice of intent to file a medical malpractice action (MCL 600.2912d).

3. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — WRONGFUL DEATH SAVING PROVISION — AFFIDAVITS OF MERIT.

The wrongful death saving period is not tolled when an affidavit of merit is successfully challenged as being invalid; if an affidavit of merit is successfully challenged and there is no remaining time under the wrongful death saving period, the medical malpractice action must be dismissed with prejudice (MCL 600.2912d, 600.5852).

*Turner & Turner, P.C.* (by *Matthew L. Turner* and *Argyrios E. Tsakalakis*), for Dujuan Ligons.

*Mellon, McCarthy & Pries, P.C.* (by *James T. Mellon*), for Crittenton Hospital.

*Tanoury, Corbet, Shaw, Nauts, Essad & Beutel, P.L.L.C.* (by *William A. Tanoury* and *Anita Comorski*), for David Bauer, M.D., and Rochester Emergency Group, P.C.

Before: TALBOT, P.J., and FITZGERALD and HOEKSTRA, JJ.

HOEKSTRA, J. Plaintiff, Dujuan Ligons, as the personal representative of the estate of Edris Ligons, deceased, brought this wrongful death, medical malpractice action against Crittenton Hospital, David Bruce Bauer, M.D. (Dr. Bauer), and Dr. Bauer's practice, Rochester Emergency Group, P.C. (REG). Defendants Dr. Bauer and REG and defendant Crittenton Hospital filed separate motions for summary disposition pursuant to MCR 2.116(C)(7), arguing that plaintiff failed to file a sufficient notice of intent pursuant to MCL 600.2912b, or a sufficient affidavit of merit pursuant to MCL 600.2912d, within the applicable limitations period. The trial court denied the motions. Defendants Dr. Bauer and REG thereafter filed an application for leave to file an interlocutory appeal, which this Court denied. *Ligons v Crittenton Hosp*, unpublished order of the Court of Appeals, entered January 16, 2008 (Docket No. 278622). However, our Supreme Court, in lieu of granting Dr. Bauer and REG's application for leave to appeal, remanded the case to this Court for consideration as on leave granted. *Ligons v Crittenton Hosp*, 482 Mich 1005 (2008). This Court thereafter granted Crittenton Hospital's application for leave to file a delayed cross-appeal and ordered that all further filings be made in this case. *Ligons v Crittenton Hosp*, unpublished order of the Court of Appeals, entered March 2, 2009 (Docket No. 288793).

We conclude that plaintiff's supplemental notice of intent complied with MCL 600.2912b, but that his affidavits of merit failed to comply with MCL 600.2912d. Because the filing of plaintiff's complaint and the accompanying affidavits of merit did not toll the wrongful death saving period and the wrongful death saving period has since expired, the proper remedy for plaintiff's failure to submit a conforming affidavit of merit is dismissal with prejudice. We therefore reverse

and remand for entry of an order of dismissal with prejudice.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This malpractice action arises from Dr. Bauer's treatment of the decedent on January 22, 2002, at the Crittenton Hospital emergency room. According to plaintiff, the 54-year-old decedent, who had recently had a colonoscopy, began experiencing vomiting, diarrhea, chills, and fever. She went to the emergency room at Crittenton Hospital on January 22, 2002, and was treated by Dr. Bauer. She allegedly was treated for gastroenteritis and dehydration, was given antibiotics and fluids, and then discharged later that day. She continued to experience severe pain and went back to the emergency room the next day, where she was diagnosed with peritonitis because of a perforated colon. She developed sepsis and surgical resection was not possible. Despite receiving extensive medication, the sepsis led to multiple organ failure, resulting in the decedent's death on January 29, 2002.

Plaintiff was appointed personal representative of the decedent's estate on February 22, 2005. On June 8, 2005, plaintiff served a notice of intent (NOI) to file a medical malpractice action on Dr. Bauer, REG, and Crittenton Hospital pursuant to MCL 600.2912b. A supplemental NOI was later served on October 21, 2005. Although the two-year period of limitations for a medical malpractice action, MCL 600.5805(6), had expired, plaintiff, as the personal representative of the decedent's estate, had additional time in which to file a lawsuit under the wrongful death saving statute, MCL 600.5852. The statute provides that when a person dies before the period of limitations has run or within 30

days after the period of limitations has run, the personal representative may bring an action at any time within two years after letters of authority are issued, but no later than three years after the period of limitations has run. Plaintiff filed this action against defendants on April 7, 2006.

In March 2007, defendants Dr. Bauer and REG filed a motion for summary disposition pursuant to MCR 2.116(C)(7), arguing that plaintiff failed to properly commence this action because both the NOI that was served before the complaint was filed and the affidavits of merit that were filed along with the complaint failed to comply with statutory requirements. These defendants argued that dismissal with prejudice was required because the three-year "ceiling" available under the wrongful death saving statute had expired on January 22, 2007, leaving no time to file a conforming NOI or affidavit of merit. Defendant Crittenton Hospital later filed a separate motion raising the same arguments. The trial court denied defendants' motions, finding that the NOI and the affidavits of merit complied with statutory requirements.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant or denial of summary disposition under MCR 2.116(C)(7). *Holmes v Michigan Capital Med Ctr*, 242 Mich App 703, 706; 620 NW2d 319 (2000). If there are no factual disputes and reasonable minds cannot differ regarding the legal effect of the facts, the decision whether a plaintiff's claim is barred is a question of law. *Terrace Land Dev Corp v Seeligson & Jordan*, 250 Mich App 452, 455; 647 NW2d 524 (2002). Our analysis of this case turns on the requirements of MCL 600.2912b and 600.2912d. The proper application of a statute is a

question of law that is reviewed de novo on appeal. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

### III. NOTICE OF INTENT

MCL 600.2912b(1) provides, in part, that "a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced." Regarding the requirements of the prescribed notice, MCL 600.2912(b)(4) provides:

> The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
>
> (a) The factual basis for the claim.
>
> (b) The applicable standard of practice or care alleged by the claimant.
>
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
>
> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
>
> (e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.
>
> (f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

The NOI need not be in any particular format, but it "must identify, in a readily ascertainable manner, the specific information mandated by [MCL 600.2912b(4)]."

*Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 696; 684 NW2d 711 (2004). "[N]o portion of the notice of intent may be read in isolation; rather, the notice of intent must be read as a whole." *Miller v Malik*, 280 Mich App 687, 696; 760 NW2d 818 (2008). The plaintiff bears the burden of establishing compliance with MCL 600.2912b. *Roberts, supra* at 691.

Dr. Bauer and REG contend that plaintiff's NOI failed to articulate a factual basis for his claim, failed to articulate the applicable standard of care, and failed to articulate the manner in which the alleged breach of the standard of care was the proximate cause of the decedent's death.[1] Similarly, Crittenton Hospital argues that the NOI failed to set forth the manner in which that defendant allegedly breached the applicable standard of care, failed to articulate any alleged action that should have been taken to achieve compliance with the standard of care, and failed to set forth the manner in which the alleged breach of the standard of care caused the decedent's death.

We conclude that the factual basis statement in the NOI is sufficient. Under the heading "Factual Basis for Claim," plaintiff related the symptoms that the decedent presented in her emergency room visit on January 22, 2002. He stated that the radiologist recommended "progress views" after the decedent's abdominal x-ray showed abnormalities indicative of a bowel obstruction. Under the heading "Manner the Applicable Standard of Practice or Care was Breached," plaintiff listed 20 general allegations, followed by three specific allegations:

---

[1] Although Dr. Bauer and REG challenged the breach of the standard of care and the proximate cause elements of the NOI below, they did not challenge the sufficiency of the factual basis. Accordingly, because the challenge relating to the factual basis was not preserved below, it is reviewed for plain error affecting substantial rights. *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 700; 630 NW2d 356 (2001).

u. Failed to admit patient to the hospital on January 22, 2002;

v. Failed to obtain appropriate [consultations] on January 22, 2002 such as surgery and/or GI;

w. Failed to obtain progress x-rays of the abdomen and a CT scan on January 22, 2002 prior to discharging the patient[.]

Plaintiff alleged that Crittenton Hospital was vicariously liable for its employees' and agents' actions, and that it was also liable for the negligent supervision and hiring of employees and agents and for the negligent granting of staff privileges. He further alleged that REG was vicariously liable for Dr. Bauer's actions. He identified 19 paragraphs as describing the breaches for which Dr. Bauer was specifically responsible, and attributed the remaining paragraphs to Crittenton Hospital. The 19 paragraphs attributed to Dr. Bauer included paragraphs u through w, which alleged the specific breaches of the standard of care. Consequently, the factual basis was sufficient.

With respect to Dr. Bauer and REG's argument that the NOI failed to allege the actions that should have been taken or avoided in order to comply with the applicable standard of care, we agree that plaintiff's NOI, under the heading "Applicable Standard of Care or Practice Alleged," is the sort of tautology that was deemed insufficient in *Roberts*, *supra* at 693-694. When read as a whole, however, the NOI articulates that Dr. Bauer, the emergency room physician, breached the standard of care by failing to admit the decedent to the hospital, failing to obtain appropriate consultations, and failing to obtain certain diagnostic tests. The NOI also articulates that REG is vicariously liable for Dr. Bauer's breaches of the standard of care. A reader of the document is not left to guess at the functions that Dr. Bauer and REG should have performed to meet the standard of care.

We agree, however, that plaintiff's original NOI fails to articulate the *manner* in which defendants' alleged breach of the standard of care injured the decedent. There is no explanation of how Dr. Bauer's decision to discharge the decedent from the emergency room on January 22, 2002, without obtaining progress x-rays or other appropriate consultations, caused or contributed to her death one week later. Plaintiff does not allege any deficiency in the treatment the decedent received the following day, and there is no explanation for how the one-day delay diminished the decedent's opportunity for successful treatment and recovery. A reader of the NOI must guess that plaintiff's malpractice action might possibly be based on a theory that proper diagnostic testing on January 22 would have enabled Dr. Bauer to discover the decedent's illness and begin treatment then, before her condition became hopeless the next day. But to the extent that the original NOI was insufficient in this regard, we agree with plaintiff that his supplemental NOI, served on October 21, 2005, corrected this deficiency. The supplemental NOI added the following statement:

> [H]ad Dr. Bauer admitted the patient to the hospital on January 22, 2002 and had appropriate consult[ations] been obtained including surgery and GI and had progress X-rays been obtained the patient[']s peritonitis would have been diagnosed much earlier. The [perforated] colon would have been detected and surgery would have been performed much earlier. This would have avoided the overwhelming sepsis that led to multi organ system failure and ultimately death.

This statement articulates a causal connection between Dr. Bauer's alleged breaches and the decedent's death. If Dr. Bauer had ordered the proper diagnostic tests, timely diagnosis of the peritonitis and timely detection of the perforated colon would have led to treatment in

avoidance of the sepsis that caused the decedent's organ failure and death. Thus, we conclude that the supplemental NOI remedied the deficiency in the original NOI.[2]

With respect to Crittenton Hospital, the supplemental NOI is deficient in certain respects, but nonetheless adequate. Paragraphs y through aa in both the original NOI and the supplemental NOI raise allegations of negligent supervision, negligent hiring, and negligent granting of staff privileges, but neither NOI includes any description of how Crittenton Hospital was negligent with respect to Dr. Bauer and REG's actions on January 22, 2002, or the manner in which that negligence caused the decedent's injury. Paragraph dd confusingly states that Crittenton Hospital is responsible "for all paragraphs not identified in bb," but no paragraphs are identified in paragraph bb. Assuming that plaintiff intended to reference paragraph cc, the incorporated paragraphs are as follows:

> b. Failed to ascertain and assure that trained and competent hospital personnel were, and would be, caring for and administering to the patient, and allowed untrained, and/or unqualified personnel to care for and treat the patient;

> \* \* \*

> o. Failed to employ sufficient and competent physicians, nurses and other employees with which to provide reasonably prudent and proper medical care and service to the patient;

---

[2] Because we conclude that REG is not entitled to summary disposition on the basis of an insufficient NOI, we need not address plaintiff's argument that, pursuant to MCL 600.2912b, he was not required to provide an NOI to REG because REG, as a professional corporation, is not a "health professional" or "health facility."

p. Failed to establish and enforce or reasonably comply with Federal, State, industry, and professional standards . . . reasonably designed for the care of its' [sic] patients, and/or failed to comply with, or require compliance with its' [sic] own standards, bylaws, rules and regulations for the care of patients in the patient's condition;

\* \* \*

s. Failed to ascertain the skill or qualifications of doctors who treated the patient and failed to provide, or adequately carry out through medical staff, reasonable procedures for the review, and/or supervision, of medical care furnished by doctors, to the patient[.]

Again, however, plaintiff failed to draw a causal connection between any of these alleged breaches of the applicable standard of care for a hospital and the decedent's death. Plaintiff alleged nothing regarding any staff member or physician other than Dr. Bauer's failure to order certain tests and failure to admit the decedent to the hospital. Plaintiff failed to explain how Crittenton Hospital was negligent in engaging Dr. Bauer in its emergency room as an employee, agent, or physician with staff privileges, or how this alleged negligence contributed to the decedent's death.

Despite these inadequacies, the supplemental NOI is sufficient by virtue of paragraph x, which alleges that Crittenton Hospital is responsible for its employees and actual or ostensible agents. Although the paragraph fails to explain the relationship between Dr. Bauer and Crittenton Hospital, it sufficiently permits an inference that Crittenton Hospital has an employment/agency relationship with Dr. Bauer that renders it vicariously responsible for Dr. Bauer's alleged negligence. As discussed previously, the supplemental NOI is sufficient to explain the manner in which Dr. Bauer's alleged breach

of the applicable standard of care was the proximate cause of the decedent's injury. Accordingly, Crittenton Hospital, like Dr. Bauer and REG, was not entitled to summary disposition on the basis of an inadequate NOI.

### IV. AFFIDAVITS OF MERIT

Defendants also argue that plaintiff failed to file with his complaint affidavits of merit that conformed to the requirements of MCL 600.2912d, which provides that a plaintiff claiming medical malpractice must file with the complaint an affidavit of merit signed by a qualified health professional. The affidavit must certify that the health professional has reviewed the notice and all medical records supplied by the plaintiff's attorney, and must also contain a statement of each of the following:

(a) The applicable standard of practice or care.

(b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice. [MCL 600.2912d(1).]

These requirements mirror four of the requirements specified for NOIs under MCL 600.2912b. An affidavit of merit requires no less specificity than a notice of intent. See *Mullaney v Kistler*, 471 Mich 932 (2004) (remanding for this Court to consider an affidavit of merit in light of *Roberts*); see also *King v Reed*, 278 Mich App 504, 516-517; 751 NW2d 525 (2008) (the Supreme Court's statement in *Roberts, supra* at 691-

692, that a plaintiff must make a good-faith effort to aver the specific standard of care that is claimed to be applicable to each professional or facility applies equally to an affidavit of merit).

The affidavit of merit submitted by Dr. George Sternbach recites the alleged breaches of the standard of care, namely the failure to hospitalize the decedent on January 22, 2002, and to obtain appropriate consultations, and recites that "[a]s a direct and proximate cause of the imprudent acts and omission committed by the individuals identified herein, Edris Ligons, [sic] died." The affidavit submitted by Dr. Fred Thomas states that if Dr. Bauer had admitted the decedent on January 22, 2002, and obtained the appropriate consultations, "Edris Ligons would not have died." To satisfy the requirement that an affidavit of merit state "[t]he manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged," it is insufficient to merely allege that the defendant's alleged negligence caused the injury. *Roberts, supra* at 699 n 16. Like plaintiff's original NOI, the affidavits of merit contain no explanation regarding how Dr. Bauer's decision not to admit the decedent on January 22, 2002, or obtain appropriate consultations was the proximate cause of the decedent's death. The affidavits of merit, even when read as a whole, *Esselman v Garden City Hosp,* 284 Mich App 209; 772 NW2d 438 (2009), establish no connection between the purpose of the consultations, or what condition they might have revealed, and the cause of the decedent's death, nor do they explain how the one-day delay in admitting the decedent made the outcome death instead of recovery.

These deficiencies apply to all three defendants. The failure to explain how Dr. Bauer's breach of the applicable standard of care caused the decedent's death

necessarily constitutes a failure to establish REG's and Crittenton Hospital's vicarious liability. We therefore conclude that the affidavits of merit were insufficient to comply with the statutory requirements.

## V. REMEDY

Defendants argue that the limitations period for filing a malpractice action has expired and, therefore, plaintiff's failure to file a complaint with a conforming affidavit of merit requires dismissal with prejudice. Plaintiff responds that dismissal with prejudice is not the proper remedy. According to plaintiff, because an affidavit of merit is a pleading, an affidavit of merit is subject to amendment and the amended affidavit relates back to the date of the filing of the complaint. Plaintiff requests that we remand the case to give him an opportunity to file a motion to amend the affidavits of merit.

A medical malpractice claim generally "accrues at the time of the act or omission that is the basis for the claim of medical malpractice . . . ." MCL 600.5838a(1). As previously indicated, the two-year statutory limitations period applicable to medical malpractice actions, MCL 600.5805(6), expired before this action was filed. Consequently, plaintiff relies on the additional time afforded under the wrongful death saving statute, MCL 600.5852, which provides:

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run. But an action shall not be brought under this provision unless the personal representative commences it within 3 years after the period of limitations has run.

MCL 600.5856 provides for tolling of statutes of limitations or repose. This statute provides, in pertinent part:

> The statutes of limitations or repose are tolled in any of the following circumstances:
>
> (a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.
>
> \* \* \*
>
> (c) At the time notice is given in compliance with the applicable notice period under section [MCL 600.2912b], if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.

In *Waltz v Wyse*, 469 Mich 642, 650-651; 677 NW2d 813 (2004), our Supreme Court held that MCL 600.5856(c) (formerly MCL 600.5856[d]) is not applicable to toll the period prescribed under the wrongful death saving statute. The Court explained that "[MCL 600.5856(d)], by its express terms, tolls only the applicable statute of limitations or repose. . . . [T]he wrongful death provision, [MCL 600.5852], is a *saving statute*, not a statute of limitations." *Id.* at 650 (citation and quotation marks omitted; emphasis in original). The Court further explained:

> By its own terms, [MCL 600.5852] is operational only within the context of the *separate* "period of limitations" that would otherwise bar an action. [MCL 600.5852] clearly provides that it is an *exception* to the limitation period, allowing the commencement of a wrongful death action as many as three years after the applicable statute of limitations has expired. [*Id.* at 651 (emphasis in original).]

The Court concluded that the three-year ceiling provided by the wrongful death saving statute is not "tolled" when a plaintiff files a notice of intent after the expiration of the statute of limitations. *Id.* at 651-652.

In this case, the following dates are relevant:

| | |
|---|---|
| January 22, 2002 | Date of the alleged malpractice |
| April 26, 2002 | Letters of authority issued to the decedent's husband, Herbert Ligons |
| January 22, 2004 | Expiration of the two-year statutory limitations period |
| February 22, 2005 | Letters of authority issued to plaintiff |
| June 8, 2005 | NOI served on defendants |
| October 21, 2005 | Supplemental NOI served on defendants |
| April 7, 2006 | Complaint and affidavits of merit filed[3] |
| January 22, 2007 | Expiration of the three-year "ceiling" under the wrongful death saving statute |

In *Kirkaldy v Rim*, 478 Mich 581, 585-586; 734 NW2d 201 (2007), our Supreme Court held that the filing of a complaint and an affidavit of merit tolls the statutory limitations period until the affidavit is successfully challenged as invalid. In other words, if a plaintiff files a complaint and an affidavit of merit before the statutory limitations period expires and the affidavit is subsequently determined to be invalid, the proper remedy is dismissal without prejudice, thereby enabling the plaintiff to file a complaint accompanied by a conforming affidavit of merit within the remaining time available under the statutory limitations period. In concluding that the limitations period is tolled until the

---

[3] Plaintiff avers, and defendants do not dispute, that plaintiff was entitled to file his complaint 154 days after furnishing the NOI because defendants did not respond to either the original or the supplemental NOI. See MCL 600.2912b(8).

affidavit of merit is successfully challenged, the Court relied on MCL 600.5856(a), which provides that statutes of limitations or repose are tolled when a complaint is filed. *Kirkaldy, supra* at 585.

However, our Supreme Court's decision in *Waltz* compels the conclusion that there is no similar tolling of the wrongful death saving period, because the wrongful death provision, MCL 600.5852, is a *saving statute*, not a statute of limitations. Although *Waltz* involved the application of former MCL 600.5856(d), rather than MCL 600.5856(a), this distinction is immaterial because the "statutes of limitations or repose" limitation applies generally to the entire statute. Thus, the filing of a complaint and an affidavit of merit does not toll the running of the wrongful death saving period. Accordingly, if an affidavit of merit is subsequently successfully challenged as invalid and there is no remaining time available under the wrongful death saving period, dismissal with prejudice is required.[4]

Plaintiff argues that because an affidavit of merit is a pleading, it can be amended pursuant to MCR 2.118(A). Because an amended pleading relates back to the date of the originally filed pleading, MCR 2.118(D), plaintiff claims that an amended affidavit of merit would fall within the wrongful death saving period. Caselaw does not directly negate plaintiff's argument that an affidavit of merit is a pleading. In *Barnett v Hidalgo*, 478 Mich 151, 160-161; 732 NW2d 472 (2007), our Supreme Court described an affidavit of merit as "part of the pleadings" in regard to its holding that the statements

---

[4] Contrary to plaintiff's assertion, the wrongful death saving statute does not require that a wrongful death action must be completed before the three-year "ceiling" expires. The saving statute only requires that an action be "*commence[d]* . . . within 3 years after the period of limitations has run." MCL 600.5852 (emphasis added).

contained therein are admissible as party-opponent admissions under MRE 801(d)(2)(B) and (C). In *Kowalski v Fiutowski*, 247 Mich App 156, 164; 635 NW2d 502 (2001), this Court stated that "when a defendant fails to file an affidavit of meritorious defense, that defendant has failed to plead." However, neither of these cases directly held that an affidavit of merit is, in itself, a pleading. The term "pleading" is restrictively defined in MCR 2.110(A) as including only (1) a complaint, (2) a cross-claim, (3) a counterclaim, (4) a third-party complaint, (5) an answer to a complaint, cross-claim, counter-claim, or third-party complaint, and (6) a reply to an answer. The court rule does not define the term "pleading" to include mandatory attachments such as an affidavit of merit. In the absence of any positive authority suggesting that an affidavit of merit may be amended pursuant to MCR 2.118(A), we conclude that the only permissible remedy for a defective affidavit of merit is the one prescribed in *Kirkaldy*, which is dismissal. See also *Jackson v Detroit Med Ctr*, 278 Mich App 532, 543; 753 NW2d 635 (2008) (indicating that the proper remedy for a defective affidavit of merit is not amendment but dismissal).

## VI. CONCLUSION

In sum, although we conclude that plaintiff's supplemental NOI was sufficient to comply with statutory requirements, we conclude that the affidavits of merit were not, and that dismissal is required. Because the wrongful death saving period was not tolled and because that period has since expired, the dismissal must be with prejudice. Accordingly, we reverse the trial court's decision denying defendants' motions for summary disposition and remand for entry of an order of dismissal with prejudice.

Reversed and remanded for entry of an order of dismissal with prejudice. We do not retain jurisdiction.

TALBOT, P.J., concurred.

FITZGERALD, J. (*concurring in part and dissenting in part*). I respectfully dissent from the majority's conclusion that the affidavits of merit were insufficient to comply with the requirements of MCL 600.2912d. I would affirm the order denying defendants' motions for summary disposition.

Plaintiff's decedent, Edris Ligons, went to the Crittenton Hospital emergency room on January 22, 2002, complaining of abdominal pain. Defendant Dr. David Bruce Bauer, M.D., treated plaintiff, but she was discharged from the hospital. The following day, Ligons was seen by her treating physician, Dr. Ghiath Tayeb, who then sent Ligons to the hospital. Ligons was admitted, but she eventually died on January 30, 2002. Plaintiff alleges that Dr. Bauer and defendant Rochester Emergency Group, P.C., were professionally negligent because they failed to properly diagnose and treat Ligons for a suspected perforated colon.

On or about June 8, 2005, plaintiff sent a notice of intent (NOI) to Dr. Bauer, the P.C., and Crittenton Hospital, which set forth the following factual basis for the medical malpractice claim:

> Edris Ligons was a 54-year-old woman, with a history of colon polyps, with one atypical polyp found on a previous colonoscopy. She came to Crittenton Hospital for an outpatient follow-up colonoscopy on January 14, 2002. Dr. Tayeb noted during the procedure that the colon was very tortuous and pressure had to be applied to reach the cecum. The clinical diagnosis was diverticulosis and hemorrhoids.
>
> On January 22, 2002 Mrs. Ligons presented to the Emergency Department at Crittenton with a four-day

history of vomiting, diarrhea, chills, and fever. She had a
fever of 102.4. She had abdominal tenderness on examina-
tion. She had a WBC [white blood cell count] of 15,400. An
abdominal x-ray showed an abnormal gas pattern with
mildly dilated small bowel loops, and paucity of gas or
bowel content in the colon. The report indicated that this
could reflect early or partial bowel obstruction. The radi-
ologist specifically recommended progress views. She was
treated for gastroenteritis and dehydration. She was given
antibiotics and fluids. She was discharged within six hours.

She went to Dr. Tayeb's office on the 23rd due to severe
pain. She was immediately sent to the Emergency Depart-
ment. Examination revealed changes consistent with peri-
tonitis because of a perforated colon. She developed sepsis.
Exploratory laparatomy revealed an extensive pelvic ab-
scess, and surgical resection was not possible. Despite
extensive medication, the sepsis that developed due to the
perforated colon let to multiple organ failure and death on
January 29, 2002.

In relevant part, the notice further set forth the follow-
ing with respect to the requirements of MCL 600.2912d:

**C. THE MANNER THE APPLICABLE STANDARD
OF PRACTICE OR CARE WAS BREACHED:**

u. Failed to admit the patient to the hospital on January
22, 2002;

v. Failed to obtain appropriate [consultations] on Janu-
ary 22, 2002 such as surgery and/or GI;

w. Failed to obtain progress x-rays of the abdomen and a
CT scan on January 22, 2002 prior to discharging the
patient;

x. Crittenton Hospital is responsible for it's [sic] em-
ployees and actual or ostensible agents involved in the
treatment of Edris Ligons;

y. Crittenton Hospital negligently supervised their
agents, servants and/or employees;

z. Crittenton Hospital negligently granted staff privi-
leges to their agents, servants, and/or employees;

aa. Crittenton Hospital negligently hired their agents, servants, and/or employees;

bb. Rochester Emergency Group is responsible for the negligence of Dr. Bauer pursuant to respondeat superior;

cc. Dr. David Bauer is specifically responsible for Paragraphs a, c through n, q, r, t through w;

dd. Crittenton Hospital is responsible for all paragraphs not identified in bb.[1]

**D. THE ACTION THAT SHOULD HAVE BEEN TAKEN TO ACHIEVE COMPLIANCE WITH THE STANDARD OF PRACTICE OR CARE:**

See paragraphs B and C above.

**E. THE MANNER IN WHICH THE BREACH OF THE STANDARD OF PRACTICE OR CARE WAS THE PROXIMATE CAUSE OF THE INJURY CLAIMED IN THE NOTICE:**

As a direct and proximate result of the negligence and malpractice alleged above Edis Ligons experienced conscious pain and suffering and ultimately died due to the negligence.

On April 7, 2006, plaintiff filed a complaint against Dr. Bauer, the P.C., and Crittenton Hospital. The complaint alleges that defendants were guilty of negligence and malpractice by failing to admit Ligons to the hospital on January 22, 2002, and by failing to obtain appropriate consultations on January 22, 2002. The complaint further alleges that as a result of the negligence and malpractice, Ligons suffered serious and permanent injuries resulting in her death on January 30, 2002.

Along with the complaint, plaintiff provided two affidavits of merit. One affidavit, signed by Dr. George Sternbach, set forth, in relevant part, the following

---

[1] I have omitted paragraphs a through t since they simply assert "boilerplate" language that could apply to any malpractice case.

actions that should have been taken or were omitted by the health professional/facility in order to have complied with the applicable standard of care:

v. Admit the patient to the hospital on January 22, 2002;

w. Obtain appropriate [consultations] on January 22, 2002 such as surgery and/or GI;[2]

Dr. Sternbach further stated that "[a]s a direct and proximate cause of the imprudent acts and omission committed by the individuals identified herein, Edris Ligons, died." A second affidavit, signed by Dr. Fred Thomas, stated, "It is my opinion that had the defendants admitted the patient to the hospital on January 22, 2002, and obtained the appropriate [consultations] on January 22, 2002, as outlined in Dr. Sternbach's affidavit that Edris Ligons would not have died."

On March 23, 2007, Dr. Bauer and the P.C. filed a motion for summary disposition pursuant to MCR 2.116(C)(7), asserting, in part, that the affidavits of merit did not comply with MCL 600.2912d(1). The trial court disagreed, concluding that the affidavits of merit were substantially in compliance with the statute, and entered an order denying the motion for summary disposition on May 22, 2007.

On appeal, Dr. Bauer and the P.C. argue that the affidavits of merit did not comply with MCL 600.2912d(1)(a) because they failed to articulate the applicable standard of care, and did not comply with MCL 600.2912d(1)(d) because they failed to set forth a sufficient statement of the manner in which the alleged breach of the standard of care was the proximate cause of the alleged injury. I disagree.

---

[2] I have omitted paragraphs a through u since they simply assert "boilerplate" language that could apply to any malpractice case.

One affidavit of merit stated the applicable standard of care:

The reasonable care, diligence and skill ordinarily and/or reasonably exercised and possessed by similarly staffed and equipped hospitals under the same or similar circumstances.

The degree of reasonable care, diligence, learning judgment, and skill ordinarily and reasonably exercised and possessed by physicians/healthcare providers under the same or similar circumstances.

With regard to the issue of how the breach of the standard of care proximately caused decedent's injuries, the affidavit of merit signed by Dr. Sternbach stated, "As a direct and proximate cause of the imprudent acts and omission committed by the individual identified herein, Edris Ligons, died." The affidavit of merit signed by Dr. Fred Thompson stated, "It is my opinion that had the defendants admitted the patient to the hospital on January 22, 2002, and obtained the appropriate [consultations] on January 22, 2002, as outlined in Dr. Sternbach's affidavit that Edris Ligons would not have died."

When reviewing the standard of care along with the relevant paragraphs listed under the heading relating to the manner the applicable standard of practice or care was breached, the affidavit of merit sufficiently informed Dr. Bauer and the P.C. regarding the applicable standard of practice or care as required by MCL 600.2912d(1)(a). The affidavit of merit was likewise critical of Dr. Bauer's failure to "[a]dmit the patient to the hospital on January 22, 2002" and "[o]btain appropriate [consultations] on January 22, 2002." Although the affidavits of merit do not specify how these inactions caused Ligons's death or how any of these actions could have prevented Ligons's death

eight days later, "there is no real guesswork in coming to the conclusion" that had these consultations been obtained, Dr. Bauer would have discovered the perforated colon and then surgery could have been performed on the colon. Under these circumstances, I would hold that the affidavits of merit were sufficient to comply with the statutory requirements and to satisfy the affidavit requirement's purpose of deterring frivolous medical malpractice claims by verifying through the opinion of a health professional that the plaintiff's claims are valid. *Barnett v Hidalgo*, 478 Mich 151, 163-164; 732 NW2d 472 (2007). To dismiss plaintiff's claim under these circumstances would be to elevate form over substance, which I decline to do.