# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT HUNTER,

      Plaintiff-Appellant,

v

JOHN M. CILLUFFO, M.D. and JOHN M.
CILLUFFO M.D., P.L.C.,

      Defendant-Appellee.

UNPUBLISHED
May 24, 2016

No. 326088
Grand Traverse Circuit Court
LC No. 2014-030474-NH;
      2014-030722-NH

Before: BOONSTRA, P.J., and WILDER and METER, JJ.

PER CURIAM.

Plaintiff Robert Hunter appeals as of right from two orders. Plaintiff appeals the trial court's order granting defendant John M. Cilluffo's (defendant Cilluffo's) motion for summary disposition pursuant to MCR 2.116(C)(7) (claim barred as a matter of law) and MCR 2.116(C)(8) (failure to state a claim on which relief can be granted) in case number 2014-030474-NH (Case I). Case I alleged medical malpractice relating to defendant Cilluffo's conduct "before, during and after" the February 17, 2012, surgery he performed on plaintiff. While Case I was pending, plaintiff filed a separate action against defendant Cilluffo and defendant John M. Cilluffo, M.D., P.L.C. (defendant Corporation), under case number 2014-030722-NH (Case II). Case II alleged medical malpractice specifically during plaintiff's June 28, 2012, surgical follow-up appointment. In light of its ruling in Case I, the trial court entered an order dismissing plaintiff's Case II complaint with prejudice. We affirm.

## I. FACTS

Plaintiff alleged that defendant Cilluffo began treating him in either 2005 or 2006 for "ongoing back problems" and performed three surgeries, the last of which occurred on February 17, 2012. Plaintiff described the February 17, 2012, surgery as a "surgery to address . . . disc herniations" in his "low back area" that required "decompression and fusion procedures," and then went on to describe specific areas of his back where defendant Cilluffo decided to operate and specific areas where defendant Cilluffo chose not to operate. After the surgery, plaintiff alleged, he experienced pain and continued to see defendant Cilluffo until June 28, 2012.

Because of the pain and injuries plaintiff allegedly sustained during and following the February 17, 2012, surgery, plaintiff filed a notice of intent (NOI) to file suit against defendant

-1-

Cilluffo and "John M. Cilluffo, M.D., P.C.," dated February 17, 2014.[1]  The NOI stated that "[i]mmediately following the [February 17, 2012,] surgery, [plaintiff began] complaining about severe pain and [a] limited range of motion in his low back area[,] began having trouble standing up straight during the early days of his post-surgical recovery[, and] felt a hard object protruding from his low back area . . . ."  The NOI explained that plaintiff "voiced his post-operative complications to [defendant] Cilluffo," but defendant Cilluffo "ignored" plaintiff's concerns and "refused to even palpate the area . . . ."

The NOI went on to explain that plaintiff "had several post-operative visits with [defendant] Cilluffo during which [plaintiff] continued to voice the same complaints," but "[a]gain, [defendant] Cilluffo ignored those complaints."  The NOI stated that defendant Cilluffo sent plaintiff "for conditioning therapy" in "late April 2012," but the "physical therapy staff . . . decided that [plaintiff] should not be treated until further diagnostic studies were performed" and "contact[ed defendant] Cilluffo regarding the need for further diagnostic studies . . . ."  This request, the NOI alleged, "may be why [defendant] Cilluffo ordered a MRI study of the lumbar spine with and without contrast material and a CT study of the lumbar spine without contrast."

The NOI explained that two other doctors reviewed the MRI and CT studies; the MRI was reviewed on June 22, 2012, and the CT was reviewed on June 23, 2012.  The NOI stated that reports concerning the MRI and CT tests "mentioned a kyphotic deformity above the February 17th fusion site" and further stated that the tests "likely" made "the area immediately above the L-1 vertebrae . . . visible."  According to the NOI, despite these results, defendant "Cilluffo chose . . . to highlight the seemingly larger disc herniation at the T12-L1 level as a likely cause for [plaintiff]'s ongoing back pain and inability to stand erect."  Accordingly, defendant "Cilluffo suggested that [plaintiff] undergo still another surgical procedure to address that expanding herniation, which [defendant] Cilluffo had chosen to ignore during the February 17th surgery . . . ."  The NOI explained that plaintiff "refused," and his treatment with defendant Cilluffo ended in "late June 2012 . . . ."

After plaintiff stopped his treatment with defendant Cilluffo, the NOI alleged, he saw other doctors who identified problems with defendant Cilluffo's surgery and with plaintiff's back.  Another doctor performed back surgery on plaintiff that allegedly involved "remov[ing] all of the hardware placed by [defendant] Cilluffo" in prior surgeries.

The NOI then explained that the "standards of care for neurosurgeons required the sagittal balance be carefully considered before, during and after any fusion procedure involving the lower back when the patient has had two prior fusion procedures of the spine," "that any evidence of possible loosening of the fusion hardware . . . be thoroughly investigated and corrected surgically, if necessary, on an urgent basis if it was determined that the fusion was in jeopardy due to the loosely fitting hardware," and that the "maintenance of a good sagittal

---

[1] The action against "John M. Cilluffo, M.D., P.C." was dismissed, as the entity no longer existed.

balance in the spine was particularly important . . . ." The NOI alleged that defendant Cilluffo breached that standard of care

> when he failed to consider the possibility that he might be creating a sagittal imbalance in [plaintiff]'s spine before, during and after the February 17th procedure[,] . . . failed to address [plaintiff]'s complaints regarding his inability to stand erect and [plaintiff's] complaints of ongoing pain in a timely manner[, and] failed to even examine [plaintiff]'s low back area regarding [plaintiff]'s claims that there were hard objects protruding from under his skin.

In contrast, the NOI alleged, defendant Cilluffo

> would have complied with the applicable standards of care if he had considered . . . that [plaintiff]'s third spinal fusion might create [several problems; taken steps during the surgery to correct those problems;] . . . respond[ed] to [plaintiff]s's complaints regarding severe pain in the back following surgery, an inability to stand erect, and his complaints that he could feel hard material bulging from under his skin the repaired area[; and] surgically correct[ed] the obvious defects in a timely manner . . . .

Instead, "[a]s a direct and proximate result of the . . . negligent acts and omissions," the NOI alleged, plaintiff suffered numerous injuries.

Plaintiff filed his complaint in Case I on August 18, 2014, without an affidavit of merit against defendant Cilluffo and "John M. Cilluffo, M.D., P.C." The Case I complaint alleged that defendant Cilluffo had a "duty to provide medical/surgical care that was consistent with the applicable standards of care for specialists in neurological surgery," requiring that the "sagittal balance be carefully considered before, during and after any fusion procedure involving the lower back when [plaintiff] has had two prior fusion procedures of the spine," and that "any evidence of possible loosening of the fusion hardware had to be thoroughly investigated and corrected surgically, if necessary, on an urgent basis if it was determined that the fusion was in jeopardy due to the loosely fitting hardware." It further alleged that defendant Cilluffo breached that duty when he "failed to consider the possibility that he might be creating a sagittal imbalance in Plaintiffs spine before, during and after the February 17th procedure," "failed to address Plaintiff's complaints regarding his inability to stand erect and his complaints of ongoing pain in a timely manner," "failed to even examine Plaintiffs low back area regarding [his] claims that there were hard objects protruding from under his skin," and "failed to perform remedial surgery to correct the defects in a timely manner . . . ."

Plaintiff informed the trial court that he had offered to stipulate to a dismissal of Case I without prejudice because he failed to file an affidavit of merit within the time permitted in MCL 600.2912d(3) and that he was considering another action due to the defense's failure to respond to radiological studies performed on June 22, 2012, and June 23, 2012, that defendant Cilluffo reviewed on June 28, 2012. Plaintiff believed that his earlier-filed NOI covered such a claim, which would toll the statute of limitations for 182 days. Instead of agreeing to the dismissal, defendant Cilluffo filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and

(C)(8), requesting that all of plaintiff's claims be dismissed with prejudice. Significantly, he argued that the NOI did not cover such an action because it never mentioned June 28, 2012.

Before responding, plaintiff, on December 30, 2014, filed his Case II complaint without an affidavit of merit against defendants. The Case II complaint alleged that "Defendants were served with [NOIs] pursuant to MCL 600.2912b(1)(4) . . . ." Significantly, plaintiff alleged that he "continued to see Defendants until sometime in June 28, 2012 [sic]." Plaintiff alleged that defendant Cilluffo's duty of care required him, "when confronted with any significant evidence of loosening of the fusion hardware or a non-union of the fusion, [to] proceed surgically on an urgent basis to address those conditions," but that defendant Cilluffo breached that duty "when he failed to timely address Plaintiff's complaints regarding an inability to stand erect, hard objects projecting outward from his spinal area, and complaints of ongoing pain . . . despite having actually reviewed the MRI and CT imaging studies obtained on June 22, 2012 and June 23, 2012 respectively, which demonstrated" injury, and in "fail[ing] to perform remedial surgery to correct the apparent defects in a timely manner . . . ."

In responding to the defense motion for summary disposition, plaintiff argued that the NOI addressed defendants' June 28, 2012, actions. Therefore, he asserted, the NOI tolled the statute of limitations, allowing for a dismissal of Case I *without* prejudice and the filing of Case II. The trial court disagreed and granted the defense motion for summary disposition in Case I with prejudice, finding that the NOI contained "very little mention of these two [June 22, 2012, and June 23, 2013,] studies," and that plaintiff's "claim of malpractice against [defendant] Cilluffo is [that] he failed to read [the studies] properly or misinterpreted them," but "[n]owhere in the [NOI] does it say that that's the standard of care [defendant Cilluffo]'s supposed to have breached." Therefore, the court concluded, the NOI was not "sufficient to toll the statute of limitations with respect to the act of malpractice on June 28, [2012,] and[, thus,] the [limitations period] actually expired June 28, 2014." Plaintiff "agree[d] in light of the ruling [that] both [cases] would be dismissed with prejudice," so the trial court also dismissed plaintiff's Case II complaint with prejudice. This appeal followed.

## II. ANALYSIS

Plaintiff argues that his NOI fully complied with MCL 600.2912b(4) with regard to defendant Cilluffo's failure to properly review the imaging studies he had in his possession during plaintiff's June 28, 2012, clinical visit and defendants' corresponding failure to provide proper care on June 28, 2012. We disagree.

We review de novo a trial court's decision regarding a motion for summary disposition. *Roberts v Mecosta Co Hosp*, 470 Mich 679, 685; 684 NW2d 711 (2004). We also review de novo issues involving the proper application of a statute. *Ligons v Crittenton Hosp*, 285 Mich App 337, 342-343; 776 NW2d 361 (2009).

Before commencing a medical malpractice action, a plaintiff must give the potential defendant "health professional[s]" or "health facilit[ies]" at least 182 days' written notice of the action. MCL 600.2912b(1). Doing so tolls the two-year limitations period, MCL 600.5805(6), for the 182-day notice period, *Roberts*, 470 Mich at 685-686. The written notice must contain a statement of at least all of the following:

-4-

(a) The factual basis for the claim.

(b) The applicable standard of practice or care alleged by the claimant.

(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.

(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.

(e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.

(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim. [MCL 600.2912b(4).]

Plaintiff bears the burden of establishing all six requirements. *Roberts*, 470 Mich at 691.

In determining what is required to comply with MCL 600.2912b(4), the Court in *Roberts*, 470 Mich at 701, concluded that the NOI must contain a "degree of specificity which will put the potential defendants on notice as to the nature of the claim against them." The NOI must specify the allegations against each individual defendant, *id*. at 682, but "because the NOI comes at an early stage of the malpractice proceeding, the plaintiff does not have to draft the notice 'with omniscience.' " *Decker v Rochowiak*, 287 Mich App 666, 676; 791 NW2d 507 (2010), quoting *Roberts*, 470 Mich at 691. "Rather, the plaintiff must 'make good-faith averments that provide details that are *responsive* to the information sought by the statute and that are as *particularized* as is consistent with the early notice stage of the proceedings.' " *Decker*, 287 Mich App at 676, quoting *Roberts*, 470 Mich at 701 (emphasis in *Roberts*). Doing so "is not an onerous task: all the [plaintiff] must do is specify what it is that [he or] she is *claiming* under each of the enumerated categories . . . ." *Roberts*, 470 Mich at 701 (emphasis in original). However, information that allows only an inference to be drawn regarding the basis for a statutory ground is insufficient. See *id*. at 697. Similarly, an NOI that merely informs a potential defendant "of the nature and gravamen of plaintiff's allegations" is insufficient. *Boodt v Borgess Med Ctr*, 481 Mich 558, 560-561; 751 NW2d 44 (2008). Therefore, the plaintiff must go beyond the substantial point or essence of a claim, and, instead, the required information for each category must "be specifically identified in an ascertainable manner . . . ." See *Roberts*, 470 Mich at 701. No particular "method or format" is required to do so. *Id*.

In this case, defendants do not challenge whether plaintiff's NOI set forth the information required under MCL 600.2912b(4)(f). We address plaintiff's compliance with the remaining subsections with regard to defendant Cilluffo first.[2]

---

[2] Plaintiff's argument that defendant Cilluffo acknowledged notice of claims of alleged negligence on June 28, 2012, in a previous motion for summary disposition is unpersuasive, and

While the remainder of plaintiff's NOI may allow an inference to be drawn that he alleged malpractice on June 28, 2012, *Roberts*, 470 Mich at 697, or may assert the "gravamen" or substantial point or essence of plaintiff's claims, *Boodt*, 481 Mich at 560-561, such assertions are insufficient to comply with the remaining subsections of MCL 600.2912b(4). It is unclear what exactly plaintiff is "*claiming*" under the remaining subsections with regard to any actions by defendant Cilluffo on June 28, 2012, and the NOI failed to "specifically identif[y]" the factual basis for such a claim. *Roberts*, 470 Mich at 701. Therefore, plaintiff's NOI was deficient.

With regard to whether plaintiff's NOI "contain[ed] a statement of . . . [t]he factual basis of the claim" against defendant Cilluffo, MCL 600.1912b(4)(a), the NOI failed to allege specific acts of malpractice on June 28, 2012. In fact, the parties agree that the NOI never mentioned the date June 28, 2012. Instead, plaintiff's NOI stated that plaintiff began "complaining about severe pain and [a] limited range of motion in his low back area[, plaintiff] began having trouble standing up straight during the early days of his post-surgical recovery[, and] felt a hard object protruding from his low back area" "[i]mmediately following the [February 17, 2012,] surgery." The NOI further explained that plaintiff "voiced his post-operative complications to [defendant] Cilluffo" during "several post-operative visits . . . ." However, plaintiff never tied these complaints to any particular date or office visit. Cf. *Ligons*, 285 Mich App at 341, 344-345. The NOI claimed that defendant "Cilluffo ordered a MRI study of the lumbar spine with and without contrast material and a CT study of the lumbar spine without contrast," claimed that the images "mentioned a kyphotic deformity," and described how other doctors reviewed these images. The NOI appears to suggest that defendant Cilluffo reviewed these images, focused on an alternative back problem, and recommended a surgery that plaintiff rejected. However, the NOI never clearly stated that defendant Cilluffo reviewed the MRI or CT scans, clarified how his review, or lack thereof, constituted malpractice, or tied this review and any subsequent recommendation to a June 28, 2012, office visit. Therefore, the NOI failed to comply with MCL 600.2912b(4)(a).

"Proof of the standard of care is required in every medical malpractice lawsuit . . . ." *Roberts*, 470 Mich at 694 n 11. With regard to whether the NOI included "a statement of . . . [t]he applicable standard of . . . care," MCL 600.2912b(4)(b), the NOI again failed to "specifically identif[y]" the standard of care that defendant was required to follow during the June 28, 2012, appointment, *Roberts*, 470 Mich at 701. The NOI stated that "standards of care for neurosurgeons required the sagittal balance be carefully considered before, during and after any fusion procedure involving the lower back when the patient has had two prior fusion procedures of the spine," "that any evidence of possible loosening of the fusion hardware . . . be thoroughly investigated and corrected surgically, if necessary, on an urgent basis if it was determined that the fusion was in jeopardy due to the loosely fitting hardware," and that the "maintenance of a good sagittal balance in the spine was particularly important." When considered in the context of plaintiff's allegations in Case II that defendant Cilluffo was required to perform certain tasks when reviewing the MRI and CT scans conducted on June 22, 2012, and June 23, 2012, and was required to act during a June 28, 2012, appointment, these standards are analogous to the inappropriately

plaintiff cites no authority to support his argument that we should consider defendant's actions following an NOI, instead of the NOI's text, in assessing compliance with MCL 600.2912b(4).

general standards alleged in *Roberts*, *id*. at 694, that defendants must "properly care for [the plaintiff] . . . and . . . render competent advice and assistance." Therefore, the NOI failed to comply with MCL 600.2912b(4)(b).

With regard to how the NOI phrased the "manner in which it is claimed that the applicable standard of . . . care was breached by" defendant Cilluffo, MCL 600.2912b(4)(c), plaintiff's NOI claimed "that [defendant] Cilluffo breached the applicable standards of care when he failed to consider the possibility that he might be creating a sagittal imbalance in [plaintiff]'s spine before, during and after the February 17th procedure[, and] . . . failed to address [plaintiff's post-surgery] complaints." Such information references unfortunate circumstances that occurred to plaintiff post-surgery, *Roberts*, 470 Mich at 697, and may allow an inference to be drawn that plaintiff alleged a breach on June 28, 2012, *id*., or may assert the "gravamen" of plaintiff's claims, *Boodt*, 481 Mich at 560-561, but such assertions are insufficient to establish the manner in which defendant Cilluffo breached a required standard of care on June 28, 2012. For example, the NOI failed to reference defendant Cilluffo's use of the CT and MRI studies to facilitate his recommendations. See *Roberts*, 470 Mich at 697 (finding the statement of breach inadequate because "[t]here [wa]s no allegation, for example, that any of the defendants failed to perform critical tests, incorrectly diagnosed her condition, or failed to refer her to a specialist in keeping with the appropriate standard of care). Therefore, the NOI failed to comply with MCL 600.2912b(4)(c).

With respect to whether the NOI "contain[ed] a statement of . . . [t]he alleged action that should have been taken to achieve compliance with the alleged standard of practice or care," MCL 600.2912b(4)(d), plaintiff's NOI stated that defendant Cilluffo should have "considered . . . that [plaintiff]'s third spinal fusion might create" several problems, taken steps during the surgery to correct those problems, "respond[ed] to [plaintiff]'s complaints," and "surgically correct[ed] the obvious defects in a timely manner . . . ." However, the NOI "failed to identify any particular action that defendant [Cilluffo] should have taken to achieve compliance with the standard of care" on June 28, 2012. *Roberts*, 470 Mich at 698 (emphasis removed). Therefore, defendant Cilluffo was inappropriately "left to guess . . . which aspect of plaintiff's treatment was deficient" on June 28, 2012, and left to guess "what plaintiff alleges defendant[ Cilluffo] should have done differently." *Id*.; cf. *Ligons*, 285 Mich App at 345. Thus, the NOI failed to comply with MCL 600.2912b(4)(d).

Finally, this Court must consider whether the NOI "contain[ed] a statement of . . . [t]he manner in which it is alleged the breach of the standard of . . . care was the proximate cause of the injury claimed." MCL 600.2912b(4)(e). Plaintiff's NOI no doubt described numerous injuries that he sustained, but he claimed that those injuries were caused "[a]s a direct and proximate result of the . . . negligent acts and omissions" described in the NOI. Because the NOI insufficiently described the alleged negligence of defendant Cilluffo on June 28, 2012, such a statement was insufficient to tie plaintiff's injuries to defendant Cilluffo's conduct on that date. Therefore, the NOI failed to comply with MCL 600.2912b(4)(e) and plaintiff's NOI was deficient.

Plaintiff did not argue that the statute of limitations should be tolled in light of the NOI's deficiencies, *Bush v Shabahang*, 484 Mich 156, 170; 772 NW2d 272 (2009), request an opportunity to amend his NOI in lieu of dismissal, or argue that an amendment would be "in the

-7-

furtherance of justice," *id*. at 176-177. Therefore, we uphold dismissal of plaintiff's claims against defendant Cilluffo.

We now turn to evaluating the NOI's claims against defendant Corporation, given that NOIs must set forth allegations as "applicable to each named defendant," including specific allegations against professional corporations in addition to the doctors they employ. *Roberts*, 470 Mich at 682, 692-694. Defendant Corporation was not a party to the action in which defendant Cilluffo filed the motion for summary disposition. Plaintiff listed "John M. Cilluffo, M.D., *P.C.*" in his NOI. (Emphasis added.) Defendant Corporation was added in Case II. Therefore, the NOI was deficient with regard to defendant Corporation, MCL 600.2912b(4), and plaintiff failed to give defendant Corporation at least 182 days written notice before filing his Case II complaint, MCL 600.2912b(1).

"Because a medical malpractice plaintiff must provide *every* defendant a timely NOI in order to toll the limitations period applicable to the recipient of the NOI, plaintiff failed to toll the limitations period . . . ." *Driver v Naini*, 490 Mich 239, 251; 802 NW2d 311 (2011) (emphasis in original). Plaintiff's Case II complaint against defendant Corporation was time-barred, MCL 600.5805(6), and, thus, the trial court appropriately dismissed plaintiff's claim against defendant Corporation.

Affirmed.


/s/ Mark T. Boonstra
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter